Anderson, J.
This is a proceeding by bill in chancery, under the statute of wills, to contest the validity of paper writings purporting to be the last will and testament of Mrs. Ann Hubbard deceased, which had been admitted to probate in the Circuit court of the city of Richmond as her last will and testament. An issue devisavit vel non, as required by the statute, was directed to be tried by a jury. Hpon the issue the jury found a special verdict; whereupon the court gave judgment for the defendants, ■and decreed that the bill of the plaintiffs be dismissed with costs: from which decree an appeal was allowed to this court.
Two questions are raised upon the record in this cause, which comprehend the whole case :
I. First. Can a husband devise or bequeath to his wife an estate, and empower her by his will to make her will in his lifetime,-and designate the person, or persons, to whom the estate shall pass at her death, if she survive her husband, or, at his death, if he survive'her ?
Our statute of wills empowers a married woman to make a will, in the exercise of a power of appointment. But it is contended that such power cannot’;be conferred by the will of the husband, to be exercised by the wife *27 in his lifetime, because the property so devised, and upon which the power of appointment is to operate, is .his while he lives, and may be otherwise disposed of by him, by a change in his will, which is ambulatory and revocable.
Under our statute of wills, which declares that the .power of making a will “ shall extend to any estate, right or interest to which the testator may be entitled at his death, notwithstanding he may become so entitled subsequently to the execution of the will” (Code of 1860, ch. 122, § 2, p. 572), an estate devised by A to B, who is sui juris, will pass to C, by the will of B, though made in the lifetime of A, provided A dies without revoking the devise, and B survives him, and then dies without revoking his will. Is there any difference as to the effect of a will made by a married woman, if she has authority to make a will ? "Within the power given to her by the statute, her will is as effectual to pass the estate as if she were a feme sole.
But in this case, the wife having no separate estate, could only make a will in the exercise of a power of appointment. If the ambulatory and revocable character of the will does not incapacitate the devisee to dispose of a devise made by it to him, by his will, in the lifetime of the devisor, I can perceive no reason why the ■donee of a power under the will may not exercise the power of appointment by will in the lifetime of the testator. In either case, the efficacy of the devise by the will of the devisee, or of the execution of the power of appointment by the donee of the power, depends upon the testator dying without making a revocation. In the one case, the will of the devisee is valid to pass the estate to his devisee if his devisor dies without making a revocation, he surviving. In the other, the appointment is good and effectual if the donor of the power dies without revoking the power, whether the donee of the power survives him or not. It is difficult to perceive a *28 reason why the owner of an estate may not by his will grant to another the power of appointing in his lifetime succession to that estate, after his decease, if he can bequeath the estate directly to the person whom he intended to be the appointee. It would seem to be reasonable that, when the donee has exercised the power of appointment by will, it should be as valid to pass the estate to the appointee as if it had passed to him by the-will of the devisee of the donor of the power. In both cases his title and succession to the estate depends upon the donor dying without the revocation of the power in the one case, or of the devise in the other. ‘ Therein this difference, however : If the donee of the power dies in the lifetime of the donor, having executed the power, it is valid to pass the estate at the death of the donor ; but, if the testator survives his devisee, the' estate cannot pass to his devisee, but lapses into the residuary estate, or passes to the issue of the first devisee. So that an appointment by the will of the donee of the power would be a more certain means of investing the title in the appointee than a devise by the devisee of the donor.
But it may be objected, that the donee, after executing the power by her will, may revoke the same before, or, if she survive him, after the death of her husband; and that consequently the will of the donor can vest no right in the appointee, except at the will and pleasure of the donee of the power. But it will be perceived, that if this would invalidate the power conferred by the will of the donor, it would invalidate every power of appointment, for its exercise in every case depends on the will and pleasure of the donee of the power.
But it is further contended, that the will of the husband cannot confer the power in his lifetime, because it must be given directly, by conveyance to the donee of the power, or by creating a seisin in a third person, to-serve and feed the uses, to be raised by the exercise of the power, so that the power may work and take effect *29 ■under and by means of the instrument which creates it; for the act of appointing under the power merely gives force and effect to the instrument creating it, by which alone the appointment has effect.
It is true, that where the power has been executed, the appointee holds directly from the donor of the power, under the instrument creating the power ; but it is not perceived how it would be necessary to create a seisin in a third person, to serve and feed the uses to be raised by the exercise of the power, in order to vest the estate in the appointee. If the appointee takes by virtue of the execution of the power by the will of the wife, she takes and holds under the will of the donor, which was the instrument creating the power. Eor, to pass the title to her in this way, was it necessary to create a seisin in a third person. The testator was seised until his death. If the power of appointment was exercised by the wife, by making and publishing her will in his lifetime, and he survived her, the estate passed, immediately on his death, to the appointee. If she survived her husband, upon his death she was immediately invested with the fee sub modo, and held it until her death, when it passed under her will, which had not been revoked, to her appointee; so that there was no necessity to create a seisin in a third person to serve and feed uses to be created by the exercise of the power. These conclusions seem to be consonant with reason, and they are not without the sanction of authority.
Bright, in his able treatise on Husband and Wife, says, that a will made by a wife of her husband’s residuary estate—bequeathed to her by his will—under the power given to her by his will, to dispose of it by her testament, made either in his lifetime, or afterwards, is valid, 2 Bright on Husb. and Wife, p. 68. And in support of this principle, he relies upon Scammett v. Wilkinson, in Kings Bench, 2 East., p. 552, and Stevens v. Bagwell, in the High Court of Chancery, 15 Ves. R. *30 139, 155, as direct authority. But it is contended by the able and learned counsel for the appellants, that thePr3nctple question was not involved in those cases, and that they do not sustain the appellee in this preten83011- "Whilst it is true the principle was not contested? in those cases, and was not directly in issue, we think, it wa's indirectly involved in both cases. It was admitted to be the law by the able and distinguished counsel on both sides, and received the express sanction and approval both of the Kings Bench and the High Court of Chancery. In Stevens v. Bagwell, Sir William Grant says, referring to the case of Scammell v. Wilkinson, “It was there held that the Spiritual court ought not to* grant a general probate; but the court thought the probate was more limited than was necessary; for they say that as Mrs. Pearce, besides what she could dispose of by the will of her husband, to which the limited probate-is confined, had the power to make a testament and appoint an executor of the goods which she had as executrix of her brother, to which that probate does not extend, the probate in this case may be more extensive-than what the plaintiffs insist that it should be.” They insisted that it should be limited to the estate beqeathed to her by the will of her husband. “My opinion is (said Sir Wm. Grant), that this will of hers had no operation whatsoever, except to pass what she took under her husband’s will, and to transmit the representation to Wm. Stevens, to her own executors.” We think these cases do sustain the proposition, that a husband may, by his will, give an estate to his wife, and a power of appointment to direct the course of its succession, to be exercised by her will, executed in his lifetime. And so have they been regarded, not only by Bright, but by Roper and other eminent text writers* and jurists; and we have found no case to the contrary.
The case of Morwan v. Thompson, 3 Hagg. R. 239, is *31 to the same effect, and is directly in point, at least as to the validity of the execution of the power by the wife, by her will, made in the lifetime of the husband. In that case the will of the wife was made in the lifetime of her husband, under an ante-nuptial settlement, and by authority also of her husband’s will, executed during coverture, by which he made an additional settlement on her. The wife survived the husband, andj died without re-executing her will after the death of her husband. Sir John Hicholl says, “ She was testable when she made the will, and when she died—both under the settlement and under her husband’s will—there are no alteration of circumstances from which an intention to revoke can be presumed.” Our conclusion, therefore, is, both upon reason and authority, that the first question must be answered in the affirmative.
II. The second question raised by this record is, if such power can be conferred, has it been validly executed by the wife in this case ? Are the paper writings in question a valid execution of the power ?
1st. It is contended, that because a will cannot take-effect to pass the title until the death of the testator, the-will of Mrs. Hubbard could not be an execution of the power until her death, which occurred subsequently to the death of her husband, and that therefore the power was not executed by her in the lifetime of her husband.
The power granted was to make a will, and she made and published her will in the lifetime of her husband. Ho other act was necessary to be done by her to complete the execution of the power. It was an execution of the power, though it could not pass the title inpmsenti, and not until the death of Mrs. Hubbard and her husband in futuro. But if the will of Mr. Hubbard as to the bestowment of this power, and Mrs. Hubbard’s will as to the exercise of the power, can be construed to speak, the former from the date of his last codicil, and *32 the latter from the date of her will, the making and publishing of her will by Mrs. Hubbard was a complete execution of the power on her part, subject, of course, to her right of revocation. But nothing more being necessary to be done by her to complete the execution, and it being sufficient to pass the title at her death, and after the death of her husband, from the donor of the power to the appointee, as designed, it was a complete execution. Under our statute, when a will may be construed to speak and take effect, is, in a qualified sense, a question of intention. The statute provides that it shall be construed to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. Code of 1860, chap. 122, sec. 11, p. 573. It plainly appears, we think, from the will of Mr. Hubbard, that he intended the clause of his will, by which he grants to his wife the power to make a will in his lifetime, should speak and take effect immediately, and not be postponed until Ms death. It is equally clear Mrs. Hubbard intended that her will should speak and take effect, as an execution of the power, from its date, though not to divest and pass the title in the lifetime of her husband and herself. We are of opinion, therefore, that the position, that the power has not been executed, because it was not executed in the lifetime of Wm. H. Hubbard, and during coverture, cannot be maintained.
2d. Because the paper writings in question were not re-executed and re-published, as and for the last will and testament of Mrs. Hubbard, after the death of Mr. Hubbard. In Morwan v. Thompson, supra, Sir John Nicholl says, “There is no rule of law, of which I am aware, that holds that a will validly made during coverture, shall become invalid merely by reason of the husband’s death.” But it seems to me that we need not pursue this investigation farther than to look to our statute of wills, which declares what shall be a revoca *33 lion of a will. Section 7 makes marriage, except in .i -¡, j ,. the case specified, a revocation.
Section 8 declares that no will or codicil shall be revoked, except in the cases specified, to wit: revocation by marriage, as set out in the preceding section, “or by a subsequent will or codicil,” or by some writing deciaring an intention to revoke the same, and executed in a manner'in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, cancel-ling, or destroying the same, or the signature • thereto, with the intent to revoke.” Code of 1860, chap. 122, sec. 7, 8, p. 573. This section enumerates every mode hy which a will validly made may be revoked; and it authoratively declares, that “no will or codicil, or any part thereof, shall be revoked ” in any other way. And the death of the husband, as a revocation of the will of his wife validly made in his lifetime, is not embraced in this enumeration, and must, therefore, be excluded. "But if the will of the wife, made in the lifetime of the husband, is not revoked by his death, it cannot be necessary to re-execute and re-publish it after his death to preserve its vitality.
Bd. Because the succession of the donee of the power, by the death of the husband, to the property over which the power was to ride and operate, must work an ex-tinguishment of the power. Mr. Roper, in his work on husband and wife, 2 Rop. Hus. and Wife, p. 102, Citing Clere's Case, 6 Rep. 17 b. ; Cox v. Chamberlain, 4 Ves. R. 631; Roach v. Wadham, 6 East R. 289 ; says, “great difference of opinion has prevailed upon the merger of the power, when the fee subject to it was limited to the donee of such power. Some of the cases have determined, that the power merged in the fee : while others, ■ that the fee vested in the donee sub modo, viz: subject to be divested on a due execution of the power. This-latter, he says, appears to be the right determination. In *34 support of this opinion he cites very high authority.” -And herewith Sir Edward Sugden agrees. He says, Lord Ashburton thought the separate existence of the power was incompatible with the ownership of the fee. But it is now settled that the power is not merged. 1 Sugd. on Powers, p. 105. From Sir Edward Clere's case to that of Maundrell v. Maundrell, 10 Ves. R. 246, it had been considered clear, that the power in question was not absorbed by the fee. Lord Chancellor Eldon held clearly that the power might well subsist with the fee. And Mr. Sugden says, his authority has settled the point. Ibid, p. 109, 110. Mr. Spence says, in. his work on equitable estates and interests,—If an estate be conveyed to a married woman in fee, with a superadded power of appointment, though it was formerly held that the power was merged in the fee, it is now settled that the wife has the power to appoint the fee. 2 Spence Eq. Ju. of the court of Chancery. The question arose in this court in the case of Shearman's adm'rs v. Hicks & al., and was decided in the same way, 14 Gratt, 99.
4th. And fourthly and finally, that the power ex-' ercised by Mrs. Hubbard is not within the purposes of the powers granted, and therefore invalid. It is contended'that the power only extended to the tenth clause of the third codicil, which made provision for the residuary estate, in certain events named therein, and was only designed to prevent lapses. But that had already been provided for, by directing that, in the event of his .wife’s dying before him, those interests should pass and belong as she by her will should direct.
But he adds, “And for all purposes contemplated in my will and codicils thereto.” Hot only in relation to his residuary estate, “but for all purposes contemplated in his will and codicils”—implying that there were other purposes contemplated for which additional powers were necessary, and which were, not confined to the tenth clause of the third codicil—“for all the purposes con *35 templated in my will and codicils,” language could not be more comprehensive, “I authorize and empower my wife to make a will in my lifetime.” '
In reading a will we should read the thoughts and intents of the testator. The meaning of the testator is what we want; and we may transpose words and senienees, or supply them, if necessary, to get at it. The intention of the testator is the great desideratum. And whatever was his intention, as disclosed by his will rightly construed, so as to speak the mind of the testator, ought to be carried out, if lawful and possible.
Then what did the testator intend by the clause under consideration ? It seems designed to complete and perfect the whole of his testamentary disposition, including will and codicils. Upon a careful examination and analysis of the sentence, I think there can be no uncertainty as to his meaning; and that without transposing or supplying words or sentences.
Whatever ambiguity there may be as to other expressions, there is none as to this; that he expressly gives his wife power to make a will in his lifetime. A will •of what? Unquestionably of the property he had previously given to her, in his will' and .codicils thereto. She had no other property. The power to make a will which he gave to her, necessarily imports a power to make a testamentary disposition of all the property which he had devised and bequeathed to her by his-will and codicils. And this he empowered her to do in his lifetime.
This power he gave her for all the purposes -contemplated in his will and codicils. If for all, then for apart— for any of those purposes. He had given her power expressly to dispose of a particular bequest by will, the legacy of one hundred thousand dollars in stocks. And in this very clause, he had provided, that if she did not survive him, the interest which he had given her in his residuary estate, should pass, and belong as she might by *36 her will direct; which necessarily implies that she might make a will, which may or may not be limited to the case supposed—her not surviving him.. But now, in this final sentence of his testamentary disposition, to-carry out all the purposes contemplated in his will and. codicils, and to remove all ambiguity, he gives her a-general power to make a will in Ms lifetime. It is not dependant upon any condition of her surviving him, or of his surviving her. The language implies no such condition or qualification ; and such construction is repugnant to it. It is a general power to make a will in his lifetime; ■ to dispose of the property which he had devised and bequeathed to her ; that is, to designate the persons to whom it should pass at her death, if she survived her husband, and at his death, if he survived her, according to the purposes; contemplated in the will and codicils. Those purposes were evidently, that the husband should not be divested of the property in his life time-; and that at his death it should pass to his wife, if she survived; and if not, to be disposed of according to her wishes. Whether she survived him or not, it was his wish and purpose that the property should pass and belong according, to her wishes. If she survived him, the devises and bequests which he had made to her would give her the power of disposal, and therefore according to the purposes contemplated in his will and codicils. If she did not survive him, he expresses his purpose, in the first sentence of the thirteenth clause of the first codicil, in these words, “I desire and intend that the property in my will given and devised to her, shall be disposed of according to what I believe to be her wishes ; and as we have seen, such were his purposes, if she should survive him; for such is the legal effect of the devises and bequests he made to her. And now by this general clause, At the close of the last codicil to his will, to secure the execution of these purposes contem *37 plated in his will and codicils, he gives her power to make a will in his life time. Nearly four years had elapsed, when he made this codicil, since be had executed his will, and he was still living, and might yet live a good many years. If the exercise of the power by his wife, to direct the succession of the eBtate, which he had given to her, was postponed until after his death, it might never be done. If it was not done in his life time, it could not be done by her, if she should not survive him. And if she survived him, he may have been admonished, by her advancing years and increasing infirmities, that she might then be incapable of making a will. This must have been a subject of much solicitude to both of them, as [they had adopted Anna II. Key-o nolds from her birth, and had for her the affection of parents for their own child. It was undoubtedly well understood between them, how Mrs. Hubbard would direct the succession; and that her wishes and intentions, were exactly in accord with his own. They thought and felt alike on this subject. But, whatever were the considerations operating on Mr. Hubbard’s mind, it is not material. ¥e have his act. Here is his will, by a ■clause in which he, unequivocally and unqualifiedly, empowers his wife to make a will in his lifetime for all the purposes contemplated in his will and codicils ; the chief of which was, as touching the property he had devised and bequeathed to Mrs. Hubbard, that she should have the power of disposing of it, and directing its succession. If she did not survive him, the power had as yet been only partially given; if she did, the devises and bequests, according to their legal effect, would invest her with that power; but if she did not exercise that power of disposition until after his death, it might never be done; she might then be incapable of doing it. For these, or other reasons, which may have influenced his mind, he came to the conclusion, (and I think a very *38 prudent and judicious determination, as this case shows) to authorize her to exercise that testamentary power in his lifetime ; and to designate who shall succeed, in any event, to. the estate he had given to her. It seems to me that this is the plain and sensible interpretation of this clause of his will, and such as its language clearly imports.
Again, that he intended his wife should have power to make a will, which should have effect in the event that she survived him, is conclusively shown by the provision in the second clause of his will, before referred to. He bequeaths to her a legacy of $100,000 in stocks, in the event that she survives him. It is hers only in that event; and yet, in the same sentence, he gives her expressly power to dispose of it by will; thus authorizing her to make a will which would take effect if she survived him.
The only disability to make a will was the disability of coverture. From that she is relieved by the act of her husband. That disability being removed, she makes and publishes her will in the presence of her witnesses, and with all the solemnities required by law. There is no reason why she should make it over again after her husband’s death. It was executed strictly within the terms of the power granted.
And such is the cotemporaneous construction given to it by the testator, the testatrix, and the draughtsman of' both wills, as shown by the will of Mrs. Hubbard. Both wills were probably drawn by E. E. Howison, a well known attorney in Eichmond, who is a subscribing witness to the will and each of the three codicils of Mr. Hubbard, and to the will of Mrs. Hubbard. Her will seems to have been made at the suggestion of her husband, as it is shown that his will and codicils were exhibited to her by his request; and it was made with his assent, as shown by his will, which authorized her to- *39 make a will in his lifetime. He lived nearly two years after Mrs. Hnhbard’s will was executed, and it does not appear that he ever made any objection to it. And what is still stronger evidence of his approbation, it is in harmony with his own will, and gives the succession to the chief part of the estate he had given to his wife to his much loved adopted daughter. Mrs. Hubbard’s will was written a short time after Mr. Hubbard’s was completed, and, as we presume, by the same draughtsman ; and in the very commencement sets forth the object and purpose of her will, consistently with the power given as we construe it: “I make and ordain this my last will and testament, to take effect at my death, if I survive my said husband, and at his death if he survive me and then disposes of the property given to her by her husband’s will in harmony with it. I conclude, therefore, that these facts show that the cotemporaneous interpretation of the clause in question in Mr. Hubbard’s will by the testator, the testatrix, and the intelligent draughtsman of both, is in agreement with ours : and contemporánea expositio fortisima est in lege.
I am satisfied that the will of Mrs. Hubbard was made in the exercise of the power given to her by her husband’s will; that the power she exercised is clearly embraced in the terms and spirit of the power granted; and that her husband was well satisfied with the disposition she made, and so departed this life in peace, believing that the fruits of. his long and useful life would be enjoyed by those upon whom he intended to bestow them, especially his “much loved adopted daughter, Anna Hubbard Reynolds,” who, next to his “beloved wife,” was the chief object of his affection and bounty; and I am unwilling to divert it from that channel and course of succession, and disappoint the' wishes of the testator and testatrix, unless the law clearly and imperatively requires ; which I do not think it does. "Where there is *40 doubt iu this case, if it exists, I think it should be resolved in favor of the will. Upon the whole I am of opinion that there is no error in the decree of the Chancellor, and that it should be affirmed.
Moncure, P., and Staples, J., concurred in the opinion of Anderson, J.
Christian, J., concurred in the decree affirming the decree of the court below.
Decree affirmed.