**WORLD BROADCASTING SYSTEM, Inc., v. EAGLE BROADCASTING CO., Inc.**

No. 11159.

Court of Civil Appeals of Texas.
San Antonio.

May 13, 1942.

Rehearing Denied June 3, 1942.

R. A. Dunkelberg, of Brownsville, for appellant.

E. T. Yates, of Brownsville, for appellee.

NORVELL, Justice.

World Broadcasting System, Inc., has appealed from a judgment that it take nothing

against Eagle Broadcasting Company, Inc. Trial was to the court without a jury. Findings of fact and conclusions of law were filed. The trial court was of the opinion that the record contained insufficient evidence upon which a judgment for appellant could be based. The correctness of this holding is the principal question in the case.

Appellant's cause of action was based upon a written contract between the parties bearing date of June 17, 1937. Under the terms of the contract, the appellee as operator of Radio Station KGFI, Brownsville, Texas, subscribed to the "Sustaining Program Service" of appellant. The contract in so far as it related to the obligations to be performed by appellant read as follows:

"Now, therefore, in consideration of the premises and of the mutual covenants and promises hereinafter contained, the parties hereto do hereby agree each with the other as follows:

"A. World agrees:

"1. To supply to Station on or before July 15, 1937, 2000 program units as hereinafter defined.

"2. To supply additional program units at a rate of not less than 48 such units per calendar month beginning with the month of July, 1937, and aggregating not less than 576 such units during any twelve month period.

"3. To supply program scripts weekly beginning July 15, 1937, sufficient for 2½ hours a day of each of seven days.

"4. To equip and install in behalf of the station Western Electric double turntable 33⅓ RPM to play both lateral and vertical recordings for as long as this agreement is in force, without charge.

"5. To pay royalties to Music Publishers Protective Association covering use of Program Service—for sustaining programs, or programs locally sponsored.

"6. To replace promptly, without cost to Station upon notification and return of old discs, transportation charges prepaid, all worn out, mutilated or broken discs, except when such mutilation or breakage arises from the negligence of station and to replace, at a charge of One Dollar per disc, any discs upon the request of the Station.

"7. To devote its efforts to the advancement of electrical transcriptions as an advertising medium and broaden its program building activities."

Appellee agreed "to pay to World a service charge of $100.00 per month payable each month in advance."

The contract further provided that it should remain in force until July 14, 1939, unless terminated prior thereto.

As to termination prior to July 14, 1939, the contract provided:

"In the event that Station is in default of any of its obligations hereunder World may, at its option, upon fifteen days notice to Station, terminate this agreement, without prejudice to the claims of World accrued prior to such termination.

"Station may terminate this agreement on 30 days written notice to World in the event that World fails to supply to Station at least 2000 program units by July 15, 1937, or in the event that the supplemental current program units supplied hereunder by World aggregate less than 576 during a whole calendar year after July 15, 1937."

Appellant pleaded that it had terminated the contract as of April 15, 1938; that appellee had paid but $50, which was credited upon the sum due for the month of July, 1937, leaving a balance of $850 due under the contract.

Appellee's answer consisted of a general demurrer and general denial.

In accordance with the provisions of Rule 169, Rules of Civil Procedure, appellant made request for certain admissions. Appellee's reply to this request had not been verified at the time both parties announced ready for trial, but thereafter the trial court permitted appellee's attorney to affix an affidavit thereto. We need not discuss the propriety of the trial court's action in this regard, for the reasons hereinafter stated.

Appellant introduced in evidence the contract sued upon and its request for admissions. Over appellant's protest, the trial court considered appellee's answers to said request. We may, for our purposes here, consider this action as proper.

Appellee admitted the corporate existence of the parties and the execution and acceptance of the contract; "that on or before July 15, 1937, plaintiff (appellant) supplied defendant (appellee) with 2000 program units as defined in said contract," and "that, beginning with the month of July, 1937, plaintiff supplied additional program units at a rate of not less than 48 such units per calendar month and aggregated 576 such

units during each twelve month period until said contract was lawfully terminated."

The inquiries relating to appellant's performance in accordance with the provisions of paragraphs 3 to 7, inclusive, of Subdivision A of the contract, hereinabove quoted, were answered by the statement that appellee "does not admit the correctness" thereof "and answers 'No.'"

The only witness called upon the merits of the case was appellee's president, whose testimony formed the basis of the following finding by the trial court: "The turntable referred to in paragraph '4' of subdivision 'A' of the contract sued upon by the plaintiff was shown to have been delivered to the defendant under the contract, but the needle had fallen out of one of the units so that it required two men to operate it instead of one man as would normally be the case. The particular unit could have been replaced or bought at that time for $35.00 or $40.00."

This testimony of the witness also indicates that the contract was regarded as being in force by appellee for some seven or eight months. This was no evidence that appellee had attempted to terminate the contract.

The above statement fairly indicates all of the material matters disclosed by the transcript and statement of facts.

 The trial court was of the opinion, as disclosed by its findings and conclusions, that no judgment could be entered for appellant because it failed to show its performance of the provisions of the contract other than paragraphs 1 and 2 of Subdivision "A" of the contract, and paragraph 4 of such Subdivision to the extent above indicated. The trial court, in other words, treated all of the obligations resting upon appellant and hereinabove set out as being dependent covenants. This construction of the contract was erroneous. The rule is that "when a covenant goes only to part of the consideration on both sides and a breach may be compensated for in damages, it is to be regarded as an independent covenant, unless this is contrary to the expressed intent of the parties." 17 C.J.S., Contracts, § 344, p. 800.

We find no expression in the contract which would indicate an intention to treat as dependent the covenants binding upon appellant, with the possible exception of those admittedly performed, i. e., paragraphs 1 and 2 of Subdivision "A." As to these paragraphs, appellee is given the right to terminate the contract upon failure of appellant to perform in accordance with their provisions.

 It was not necessary for appellant to plead or prove the performance of the obligations set forth in the independent covenants of the contract. Smith v. Lipscomb, 13 Tex. 532; 10 Tex.Jur. 499, § 290; 17 C.J.S., Contracts, p. 1170, § 538.

Appellee's testimony suggested a partial failure of consideration but no such defense was pleaded. Neither did appellee assert a claim for damages occasioned by the breach of an independent covenant, but stood upon a general denial, taking the position that the covenants (other than those the performance of which was admitted) were dependent in nature and that it was consequently necessary for appellant to prove performance of each and all of them before a recovery could be had upon appellee's agreement to pay a certain sum per month as stipulated in the contract.

 There seems to be no difficulty in ascertaining the amount due appellant under the contract. The agreement itself shows a prima facie liability of $100 per month for a two-year period, limited only by the admissions made by the appellant in its pleadings. Appellee did not plead payment, which is an affirmative defense. Rule 94, Rules of Civil Procedure, Article 2014, Vernon's Ann.Civ.Stats. (now repealed).

The judgment of the trial court is reversed and judgment here rendered that appellant do have and recover of and from appellee the sum of $1,051.30, together with interest thereon from November 4, 1941 (the date of the trial court's judgment), at the rate of 6% per annum. Costs in this and the lower court are adjudged against appellee.

Reversed and rendered.