𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PHILLIPS AND UX. V. FERGUSON AND AL.

December 5th, 1888.

1. WILLS—*Equitable conversion—Lapsed legacy—Residuary legatee.*— Money bequeathed to be invested in land is generally considered real estate. Yet where, by a breach of a condition precedent annexed to devise of lands, legatee takes nothing, the conversion fails to that extent, and such portion of the money goes to residuary legatee.

2. IDEM—*Restriction of marriage—Condition precedent—Devise of lands— Personal bequest—Forfeiture.*—Conditions precedent annexed to a devise must be observed, no matter how restrictive of marriage. Such condition annexed to a bequest is operative, if it be not a general and unreasonable restriction of marriage. Where prohibited marriage occurs before testator's death, and any estate could vest under his will, no question of forfeiture can arise.

3. IDEM—*Reasonable restriction—Family—Parol evidence.*—A prohibition to marry into the family of a person named is reasonable and valid ; " family" means one of the children of such person. Parol evidence is admissible to show who was the person referred to in the will. *Senger* v. *Senger*, 81 Va. 687.

Appeal from decree of circuit court of city of Petersburg, rendered June 14th, 1887, in a suit wherein William T. Phillips and Ellen C. Phillips, his wife, were complainants, and Margaret E. Ferguson, in her own right and as executrix of E. T. Ferguson, deceased, and others, devisees and legatees under the decedent's will were defendants. The object of the suit was to have the will construed and the estate administered. It was instituted in the circuit court of Greensville county and removed to the circuit court of the said city.

The testator, after providing in his will for his widow, and making devises to certain of his children, directed in the fourth clause that $5,000 be laid out in land, to be divided between six of his children therein mentioned. And by the residuary clause he directed the balance of his estate, including the property left to the widow (at her death), to be divided between all his children, of whom there are eight. Then follows the clause out of which this controversy arises, and which is as follows: "If either one of my children above named in my will should marry in T. W. Phillips' family, I only give him or her the sum of three dollars to be their part, and to be all that him or her is to receive under the will, and the foregoing *clase* of this will that leaves them anything to be revoked, and all other portions of this will that provides for same child."

The will is dated January 31, 1884, and the testator died on the third of June of the same year. On the eleventh of February of the same year, Ellen C. Ferguson, one of the "children above named," intermarried with William T. Phillips, an adult son of the said T. W. Phillips, who, at the time, was living with his father, but was doing business on his own account, and was "in no way dependent upon his father." And the question was as to the effect, under these circumstances, of the clause of the will last above quoted.

The circuit court held that the direction that $5,000 be laid out in land, to be divided as directed, was, in effect, a devise of realty, and that the said Ellen C. Phillips was not entitled to any estate or interest in the realty devised by the will, but that she was entitled to the legacy of three dollars, and, in addition thereto, to one-eighth of the residue of the personalty bequeathed by the residuary clause, and decreed accordingly; whereupon Phillips and wife, the plaintiffs below, appealed.

*G. S. & D. M. Bernard,* for appellants.

*John Lyon,* for appellees.

LEWIS, P., delivered the opinion of the court.

1. It is clear, as the circuit court held, that, for the purposes of the will, so far as the female appellant is concerned, the money directed by the fourth clause to be laid out in land must be considered, upon the principle of equitable conversion, as real estate. *Craig* v. *Leslie*, 3 Wheat. 563; *Pratt* v. *Taliaferro*, 3 Leigh, 419; *Effinger* v. *Hall*, 81 Va. 94, and cases cited. Inasmuch, however, as we are also of opinion that she takes nothing under the will (save the legacy of three dollars), the object of the conversion, to that extent, fails, and consequently the undisposed of portion of the fund directed to be so invested, results, in its unconverted form as personalty, to the executors for the residuary legatees other than herself. 3 Pom. Eq., sec. 1172; 1 Lead. Cas. Eq. (4th ed.), 1187, 1202, notes to *Ackroyd* v. *Smithson ;* 2 Redf., Wills, 115.

The condition on which the devise was made to the children, of which she was apprised by the testator in his life-time, and before her marriage, has not been observed by her, and its observance was essential to the vesting of any estate under the will. The common law, although it does not allow a condition in restraint of marriage generally and absolutely, when annexed to a gift of lands, or of a legacy charged on land, to defeat an estate, yet if the condition be precedent, a breach of the condition prevents the estate from vesting, no matter how restrictive of marriage it may be. If, however, it be subsequent, then its effect depends on whether it is reasonable or not.

In the present case the condition in question is not subsequent, so far, at least, as the female appellant is concerned. A condition subsequent is one the effect of which is to enlarge or defeat an estate already created. 1 Lom. Dig. 262. But here, as we have said, without a compliance with the condition no estate in the land can vest at all; and as the prohibited marriage occurred before the testator's death, and therefore before any estate under the will could commence, it is clear that no estate in the

land has ever vested in the female appellant, or ever can vest in her, under the will of her father; and hence, also, no question of forfeiture arises in the case, as to which much was said in the argument at the bar by counsel for appellants.

2. With regard to the personal property bequeathed by the residuary clause of the will, somewhat different principles, derived in part from the civil law, apply. As to this, it is contended that the interest of the female appellant is absolute, because, as her interest is not given over to some one else, the condition in question is only *in terrorem.*

This position would be well taken if the condition were subsequent; for the settled doctrine is that where a personal legacy is given on a condition in restraint of marriage, and the condition is not precedent but subsequent, and is afterwards broken, and there is no disposition over, then the condition is construed as *in terrorem* merely; and a mere gift of a residue is not considered a bequest over. There must be distinct provision that the legacy shall vest in a third person, or sink into the residue, on the breach of the condition, otherwise the legacy becomes pure and absolute. If, however, the condition be precedent and not unreasonably restrictive of marriage, the legacy takes effect only upon the condition being observed. 1 Story, Eq. sec. 290.

The system, as will thus be seen, is somewhat incongruous, being, as it is, the result of a blending of the doctrine of the civil law, that marriage ought to be free, with the principles of the common law already adverted to.

The law upon this whole subject is well summarized in a valuable treatise as follows: "If a condition (in restraint of marriage) is precedent and annexed to a gift of land (or of any interest arising out of land), it operates as at the common law; when broken, it prevents the estate from vesting, whatever be its nature. When annexed to a gift of personal property, if general or unreasonable, it is wholly void, and the gift takes effect; if partial and reasonable, it is operative. When a condition is subsequent and annexed to a gift of land (or of any

interest arising out of land), if general, it is void, and although broken, the estate of the donee continues; if partial and reasonable, it is operative, and on its breach the estate of the donee is defeated. When a subsequent condition is annexed to a gift of personal property, if general, it is void; if partial and reasonable, and there is a gift over, it is operative, and upon its breach the interest of the first donee ceases, and the gift over takes effect; but if there is no gift over, then the condition is said to be *in terrorem* merely, and is inoperative." 2 Pom. Eq., sec. 933. See, also, *Maddox* v. *Maddox*, 11 Gratt. 804; 2 Lead. Cas. Eq. 144, notes to *Scott* v. *Tyler;* 1 Story Eq., sec. 289; 2 Lom. Ex'ors, 79; 2 Min. Inst. 245 *et seq.*

The question therefore arises in the present case, is the condition in question reasonable? The appellants deny that it is, insisting that it is unreasonably restrictive of marriage, and therefore void upon grounds of public policy. But no authority has been cited which goes to the extent of holding that such a condition is invalid, and doubtless none can be found. No inflexible rule on the subject is deducible from the cases, many of which are irreconcilable. The law, however, as we have seen, recognizes as valid conditions in restraint of marriage which are just, fair and reasonable; and what is such a condition must, to a great extent, be determined upon the circumstances of each particular case.

A condition not to marry a Scotchman, or a Papist, or that the widow of the testator shall not marry again, has been held valid, and no reason is perceived why, ordinarily, a prohibition to marry into a particular family is not equally good, certainly when, as is the case here, the word "family" is used in its primary and restricted sense. It is not a technical word, and, being of flexible meaning, it must be construed according to the context of the will. In one sense it means the whole household, including servants, and even boarders and lodgers. In another it means all the relations who descend from a common ancestor. Its primary meaning, however, is "children," and so

it must be construed in all cases, unless the context shows that it was used in a different sense.   An authority in point is *Pigg* v. *Clarke*, 3 Ch. Div. 672, in which case the Master of the Rolls, in delivering judgment, said: "Every word which has more than one meaning has a primary meaning; and if it has a primary meaning, you want a context to find another. What, then, is the primary meaning of 'family'?   It is 'children'; that is clear upon the authorities which have been cited; and, independently of them, I should have come to the same conclusion."   So, in *Hill's Ex'or* v. *Bowman*, 7 Leigh, 650, a trust for the purpose of aiding *any of the members of the testator's family* was held sufficiently certain, and sustained accordingly.   See also 2 Jarm. Wills, 90, *et seq.*

3. It is also clear that parol evidence was admissible in the present case to show who the individual was to whom the testator referred as T. W. Phillips, what family he had, and the relations existing between him and the testator.   Such evidence is admissible to enable the judicial expositor of the will, as. was said in *Hatcher* v. *Hatcher*, 80 Va. 169, to place himself, figuratively speaking, in the very shoes of the testator, and, in the light of all the surrounding circumstances, to ascertain his meaning.   "Thus," says Greenleaf, "if the language of the instrument is applicable to several persons, to several parcels of land, etc., or if in a will the words 'child,' 'children,' 'family,' etc., are employed, in all these and the like cases parol evidence is admissible of any extrinsic circumstances tending to show what person or persons or what things were intended by the party, or to ascertain his meaning in any other respect; and this without any infringement of the rule, which only excludes parol evidence of other language declaring his meaning than that which is contained in the instrument itself."   1 Greenl. Ev. secs. 288, 289; *Senger* v. *Senger's Ex'or*, 81 Va. 687; *Graydon's Ex'ors* v. *Graydon*, 23 N. J. Eq. 229; *Mann* v. *Mann's Ex'ors*, 1 Johns. Ch. 231; *Colton* v. *Colton*, 127 U. S. 300.

With the aid of such extrinsic circumstances, in construing

the will before us, there can be no doubt as to the testator's meaning. It appears that for many years before his death he had been at enmity with the said T. W. Phillips, who lived in his neighborhood, and for this reason imposed in his will the condition above-mentioned. The will was executed soon after his consent to the marriage of his daughter, the female appellant, with William T. Phillips had been sought in vain, and of all which she was informed at the time. But, in the language of the record, "she deliberately chose to defy her father's anger and stick to her lover," and she must now bear the consequences of her choice. Nor is the case affected by the fact that when the marriage occurred the male appellant was over the age of twenty-one years, and independent of his father, as that does not at all change the family relations of the parties within the meaning of the will.

4. It need only be added that the testator evidently intended the condition to take effect from the date of the will, and consequently effect must be given to it accordingly. The provision of the will is that in the event of a prohibited marriage, the will, as to the child or children so offending, shall be deemed *revoked*, except as to the legacy of three dollars; and this language manifests the intention of the testator too plainly to be misunderstood. Technically speaking, a will can be revoked only in the testator's life-time; but in the present case the term, undoubtedly, was used in a broader sense; that is to say, not only to apply to a prohibited marriage which might take place after the date of the will, in the testator's life-time, but after his death as well. In other words, the testator, by the language used, evidently intended to make a compliance with the annexed condition not only essential to the vesting of an estate under the will, but to a continuance of any such estate after it had once vested; and this it was competent for him to do by virtue of the statute which enacts that a will shall be construed, with reference to the estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testa-

tor, *unless a contrary intention shall appear by the will.* Code, sec. 2521; *Thorndike* v. *Reynolds*, 22 Gratt. 21.

It follows that the decree, as respects the personalty bequeathed by the residuary clause of the will, is, as the appellees insist, erroneous. It will therefore be reversed in this particular, and in all other respects affirmed.

DECREE AFFIRMED IN PART AND REVERSED IN PART.