Dorothy Sells SHACKLETON, Plaintiff,

v.

FOOD MACHINERY AND CHEMICAL
CORPORATION, a corporation organized and existing under and by virtue
of the Laws of the State of Delaware,
Defendant.

Civ. A. No. 942–D.

United States District Court
E. D. Illinois.

Sept. 4, 1958.

Grace White, LaPeer, Mich., Allén Pretzman, Columbus, Ohio, Sebat, Swanson, Banks & Jones, Ralph J. Swanson, Danville, Ill., for plaintiff.

Horace E. Gunn, of Bookwalter, Carter, Gunn & Hickman, Danville, Ill., for defendant.

PLATT, Chief Judge.

Plaintiff, Dorothy Sells Landsheft Shackelton, a citizen of Michigan, filed suit to enforce the provisions of Clause 6 of a written contract executed October 26, 1928, between her brothers, Ogden, Millar and Neal Sells, and John Bean Manufacturing Company, predecessor of defendant, Food Machinery and Chemical Corporation, an organization incorporated in Delaware. By the language of the contract the Sells brothers obligated themselves individually to transfer all the outstanding shares of Sprague-Sells, a family corporation, in consideration of $224,985, 2,778 shares of fully paid no par common stock of John Bean Company, and a provision for employment of Sells brothers upon specified terms. The First Trust and Savings Bank of Chicago, Illinois, was nominated escrowee. Clause 6 recites:

> "In addition to such purchase price The Bean Company agrees to pay Mrs. Lottie Sells, the mother of the Individuals, a royalty of $25 for each corn-husking machine sold by it or any of its subsidiaries during her life. Upon her death like royalties on sales of such machines thereafter shall be paid to her daughter, Dorothy S. Landsheft, provided she shall not have theretofore remarried; such royalties to be paid to her until her death or remarriage."

From the pleadings, affidavits and depositions the following facts appear. Ogden Sells negotiated the contract on behalf of his brothers and managed to secure Clause 6 as a part of the consideration. At the time the contract was made in 1928, plaintiff was 30 years of age and living with her mother. Though she had been informed of the provisions of the contract after it was executed, she nevertheless remarried in 1944, one year prior to the death of her mother. The defendant's Sprague-Sells Division, located at Hoopeston, Illinois, manufactures nearly all of the defendant's corn-huskers, and it was this Division which paid to Lottie Sells, the royalties accruing during her lifetime. Upon these essential facts there is no dispute, and both parties have presented a motion for summary judgment.

Plaintiff maintains that the conditions of Clause 6 restraining her remarriage are in violation of public policy, and that the court should strike them and leave the agreement to pay royalties in force. Since there is no provision for the payment of royalties to another should she remarry, plaintiff further contends that the conditions of Clause 6 violate the "in terrorem" rule and are therefore void upon this additional ground. Defendant on the other hand contends that Clause 6 embodies a condition precedent that plaintiff shall not have remarried prior to the death of her mother, and a condition subsequent or limitation which alone recites whatever provision may be in total restraint of marriage. Since plaintiff did remarry prior to the death of her mother, it is urged that she did not comply with the condition precedent, that her rights are therefore barred, and that the question of the validity of the condition subsequent or limitation is thus made moot. The defendant further insists that if the condition against remarriage becomes relevant it is not against public policy. In support of this position, defendant attempts to convince the court that the rule with regard to restraints upon marriage varies from that applicable to the case of remarriage.

Jurisdiction of this case rests upon diversity of citizenship and therefore the Illinois law of conflicts, the law

of the forum, is determinative of substantive rights. Smith v. Dravo Corp., 7 Cir., 1953, 203 F.2d 369. In Frankel v. Allied Mills, Inc., 1938, 369 Ill. 578, 582, 17 N.E.2d 570, 571, the applicable Illinois law of conflicts is stated to be that

"the validity, construction and obligation of a contract must be determined by the law of the place where it is made or is to be performed."

While the evidence does not definitely disclose where the contract was made, there are indications that it was executed in Chicago, Illinois, where the office of the escrowee was located. Also it is apparent that the performance of the contract and Clause 6 thereof has essentially taken place in Illinois. This court concludes, therefore, that the Illinois public policy will govern in determining the validity of the contract here involved.

■ There are express pronouncements in Illinois that perpetual restraints of marriage are against public policy, except where imposed by one spouse upon the other. In Shackelford v. Hall, 1857, 19 Ill. 212, 214, the following clause of a will was presented to the court:

" 'And I will and bequeath all my real estate, money and personal property, and choses in action to my wife, Ann H. Hall, during her widowhood, and in case she does not marry, during her natural life, and at her death, I will and bequeath to Henry Hall, Eliza Hall, John P. Hall and Robert Hall, my entire estate, both real and personal, to be equally divided share and share about.' "

The court then held:

"By this, the estate vested, absolutely and immediately upon the death of the testator, in the devisees as specified; in the widow a life estate, if not sooner terminated by her marriage, and the remainder in the four other devisees."

and at page 215 the court stated:

"[W]hoever will take the trouble to examine this branch of the law attentively, will find that the testa-tor may impose reasonable and prudent restraints upon the marriage of the objects of his bounty, by means of conditions precedent, or subsequent, or by limitations, while he may not, with one single exception, [the case of a husband making bequests or legacies until the remarriage of his wife] impose perpetual celibacy upon the objects of his bounty, by means of conditions subsequent or limitations."

The Supreme Court of Illinois reiterated the rule in Glass v. Johnson, 1921, 297 Ill. 149, 130 N.E. 473, wherein a testator limited the rights of his wife if she should remarry, and at page 151 of 297 Ill., at page 474 of 130 N.E., the court said:

"This condition, though in total restraint of marriage, is valid. There is an exception to the rule that a testator may not impose a total restraint upon marriage as a condition of a devise in the case of a husband making a devise to his wife."

The same public policy which invalidates conditions in restraint of marriage in deeds or wills is applicable where the restraint is imposed by contract. Fletcher v. Osborn, 1917, 282 Ill. 143, 118 N.E. 446, L.R.A.1918C, 331. In the light of the Illinois law it is incumbent upon the court to construe the meaning of Clause 6 of the contract.

■ The intention of the parties must be asertained from the instrument as a whole, with particular regard to Clause 6 and the attending circumstances in which it was negotiated. Plast v. Metropolitan Trust Co., 1948, 401 Ill. 302, 82 N.E.2d 155. The contract was the product of an arms length transaction wherein each bargained in his own best interest, and the payment of royalties to the mother and daughter constituted a material part of the total consideration. This is evident from the deposition of Ogden Sells, that the provision for Dorothy was obtained after two hours of negotiation, but the payments to his mother were agreed upon in five

minutes. Clause 6 contains two conditions precedent; royalties are payable only if husking machines be sold by the defendant, and then only in the event that plaintiff is living at the death of her mother. The life interest created in the mother was to be followed by a similar but contingent interest in Dorothy. It is apparent from the terms of the instrument that the contracting parties, insofar as Dorothy is concerned, had but a single purpose in view; no royalties were to be paid to her in the event of her remarriage. Although there are separate phrases it is obvious that the parties attempted to express but one condition in two different ways in order to accomplish the same effect. Though the purportedly separate conditions are separated by a semicolon, punctuation in a contract while it may shed light on the meaning of the parties is not necessarily controlling. Allen v. United States Fidelity & Guaranty Co., 1915, 269 Ill. 234, 109 N.E. 1035. The effect intended was to impose a perpetual restraint upon Dorothy's remarriage, and it is this intention of the parties that is given effect rather than the words which are used. This court will

> "look at the substance rather than the form of contracts, and seek for the real intention of the parties, from a consideration of all parts of the contract. The intention thus ascertained is the essence of the contract, and to this legal effect is given." Smith v. Riddell, 1877, 87 Ill. 165, 169.

To follow the construction of Clause 6 as defendant suggests would be to allow indirectly the imposition of a perpetual restraint upon remarriage which is condemned as against public policy if attempted directly.

██ Since the parties intended to impose but one condition, which is in total restraint of marriage, it is necessary for the court to determine whether that condition is precedent or subsequent.

> "When there is a doubt in regard to the meaning of words implying a condition, courts do not construe

them as precedent. The words 'conditions precedent' used in a deed by the grantor do not necessarily make the conditions precedent. (Citing a case.) Whether a condition in a deed is precedent or subsequent is a question of intention and not of phrase or form. * * * [If the condition upon which the estate depends] does not necessarily precede the vesting of the estate but may accompany or follow it, the condition is subsequent." Department of Public Works and Buildings v. Porter, 1927, 327 Ill. 28, 35, 158 N.E. 366, 369.

In Winterland v. Winterland, 1945, 389 Ill. 384, 388, 59 N.E.2d 661, 663, it is reported that:

> "The rule in this State is that the principles applicable to the vesting of real estate apply generally in the case of personal property."

In view of these holdings this court feels compelled to hold that the parties intended to impose an absolute and perpetual restraint of remarriage by means of a condition subsequent, and that the condition thus expressed is absolutely null and void as violative of the public policy of Illinois. Since plaintiff survived her mother and husking machines have been since sold by defendant, there has been full compliance with the only conditions precedent intended by the parties. The contingencies having obtained, plaintiff's rights have vested. Because the condition subsequent restraining plaintiff's remarriage is void, it is entirely inoperative and plaintiff retains her right to the royalties unaffected by that condition. Eureka College v. Bondurant, 1919, 289 Ill. 289, 124 N.E. 652.

██ There are decisions in other states holding that the prohibition of perpetual restraint upon marriage is not applicable in the case of remarriage. Stauffer v. Kessler, 81 Ind.App. 436, 130 N.E. 651; Young v. Kraeling, Sup., 134 N.Y.S.2d 109; Phillips v. Ferguson, 1888, 85 Va. 509, 8 S.E. 241, 1 L.R.A. 837; Logan v. Hammond, 155 Ga. 514, 117 S.E. 428; Berry v. Cooley, 188 Okl.

426, 109 P.2d 1081; Lewis v. Johnson, 212 Mo.App. 19, 251 S.W. 136; Commonwealth v. Stauffer, 1849, 10 Pa. 350. The text writers have also announced this rule but in most instances have relied upon cases involving the validity of perpetual restraints placed by one spouse upon the other, or upon cases involving antenuptial contracts. 2 Pomeroy, Equity Jurisprudence, 4th Ed. § 933; 2 Page on Contracts, 2d Ed., § 930; 35 Am.Jur., Marriage, § 262; 17 C.J.S. Contracts § 233. In cases where spouses are not involved sound reasoning would recommend that the rule in regard to restraint upon remarriage should not vary from that applicable to the case of marriage. To permit the debutante to avoid the perpetual restraint on marriage but not the young widow is most inconsistent. The public policy of Illinois is to be found in the constitution, statutes and decisions of Illinois, and not from the decisions "of other jurisdictions." Tripp v. Payne, 1930, 339 Ill. 178, 181, 171 N.E. 131, 133; Zeigler v. Illinois Trust & Sav. Bank, 1910, 245 Ill. 180, 193, 91 N.E. 1041, 28 L.R.A.,N.S., 1112. Furthermore, from an examination of the law of all the states it is evident that the whole subject of restraints upon marriage is buried in confusion. 39 Mich.L.Rev. 1288. This court is not disposed to rely upon confusion or to declare the views of another jurisdiction paramount to those prevailing here. This being a diversity case,

> "[a]ny convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed." Yoder v. Nu-Enamel Corporation, 8 Cir., 1941, 117 F.2d 488, 489.

It is anticipated that if this question were presented to the Illinois Supreme Court the same construction of the contract would be imposed.

Defendant's motion for summary judgment is therefore denied; the provisions of Clause 6 as construed by this court entitle the plaintiff to the royalties which have accrued and which may hereafter accrue.

Final order may be submitted in accordance with the views expressed herein.