20287

ELK & JACOBS DRYWALL, Appellant, v. TOWN CONTRACTORS, INC., Respondent.

(229 S. E. (2d) 260)

*Clifford F. Gaddy, Jr., Esq., of Gaddy and Davenport,*
Greenville, *for Appellant,*

*David D. Armstrong, Esq.,* of Greenville, *for Respondent,*

September 29, 1976.

RHODES, Justice:

This action was commenced by plaintiff-appellant, Elk & Jacobs Drywall, to recover the balance due on a subcontract under which it agreed to install the sheetrock and other incidentals for the construction of an apartment complex by defendant-respondent, Town Contractors, Inc., the general contractor for the entire project. The lower court directed a verdict in favor of Town. We reverse.

The sole dispute between the parties is whether the "retainage" under the terms of the contract is presently due and payable. The total amount of the contract is $103,000 and the retainage is $10,300.

The disputed portion of the contract is as follows:

*"2. TERMS OF PAYMENT*

*A. PROGRESS PAYMENTS:* Progress Payments will be made at the rate of ninety (90%) percent of the value of

the work actually completed in place and approved by the Contractor and will be paid as follows:

At the end of each month only, the Subcontractor shall submit his written estimate of the value of the work actually completed by him during said period, including only such materials as are actually and physically incorporated into the project. Subject to the receipt of corresponding payments by the Contractor covering the work requisitioned by the Subcontractor, and subject to the approval of quantities in place by the Contractor, ninety (90%) percent of the value of the work actually completed by the Subcontractor during said period shall be paid to the Subcontractor on the 25th day of the following month.

*B. RETAINAGE:* The retainage will be ten (10%) percent of the value of the work actually completed by the Subcontractor. Said retainage will be deducted each time that a progress payment is made and will be retained by the Contractor to insure the Subcontractors full and complete performance hereunder.

The retainage will be paid sixty (60) days after the later of the following events.

(i) Full and complete performance by the Subcontractor of its obligations hereunder and acceptance thereof by Contractor, his engineers and/or architect, if any;

(ii) Beneficial occupancy of premises;

(iii) Receipt of Certificate of Occupancy;

(iv) Full and final payment to the Contractor of all the funds due him for this project; and

(v) Receipt by the Contractor of satisfactory evidence that all material delivered at the site or work furnished to the Subcontractor by its subcontractors have been paid in full."

Drywall completed work under its subcontract on February 1, 1975, and no question is raised as to its performance.

The lower court granted the directed verdict on the ground that the evidence conclusively showed that Town, the general contractor, had not received all the funds due it from the owner. The court, in effect, construed sub-paragraph (iv) as creating a condition precedent to Town's liability for the retainage.

In *Howard-Green Elec. Co. v. Chancey & Jones Const. Co.,* 12 N. C. App. 63, 182 S. E. (2d) 601 (1971), an electrical subcontractor sued the general contractor for the balance due on a contract which provided in paragraph 3 (d) that "[f]inal payment will be paid within 15 days of acceptance of and payment for the entire contract by the Owner . . ."

The owner had not paid the general contractor because of a legal dispute between the parties not related to the subcontractor's performance. The court interpreted paragraph 3 (d) as follows:

" 'The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' *Morris Gould Electric Co. v. Atlantic Fire Insurance Co.,* 229 N. C. 518, 50 S. E. (2d) 295. Here, plaintiff contracted solely with the prime contractor and did not contract with or extend credit to the Owner, nor did plantiff accept responsibility for any part of the building project other than the electrical work. Viewing the language of the electrical subcontract in light of the situation of the parties, the end which they sought to accomplish, and against the background of customary practices in the construction industry, it is our opinion that by paragraph 3 (d) of their contract the parties created no condition precedent by which plaintiff's right to receive full payment from defendant Construction Co. was conditioned upon the Construction Co. being first paid in full by the Owner. Rather, in our opinion, paragraph 3 (d) relates solely to the time

of payment, and in that regard postpones payment only until, in the usual course of business, final settlement of accounts between the general contractor and the Owner could reasonably be expected."

The court in *Howard-Green Elec. Co.* found support for its decision in *A. J. Wolfe Company v. Baltimore Contractors Inc.,* 355 Mass. 361, 244 N. E. (2d) 717 (1969). The subcontract in that case provided that "[t]he balance of the contract price shall be paid . . . within thirty . . . days after full and final payment for the work" by the owners to the general contractor. The Massachusetts court stated:

"We interpret art. II (a) merely as setting the time of payment and not as creating a condition precedent to payment. In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition (and completion of the subcontractor's work mentioned in the requisition) so as to afford the general contractor an opportunity to obtain funds from the owner."

Additional support was found in *Thos. J. Dyer Co. v. Bishop International Engineering Co.,* 303 F. (2d) 655 (6th Cir. 1962), which interpreted a similar provision as follows:

"In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. [citation omitted.] To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into."

The owner in this case, First Hartford Realty, had not paid Town all the money due it because of a delay in obtaining permanent financing for the project which cost over two million dollars. At the time of the hearing in this Court in June of 1976, sixteen months after Drywall had completed its work, payment had still not been made.

As a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business. "In the absence of a clear expression in the contract papers that the credit risk of the general contractor and the delay in payment frequently attending on construction projects are meant to be shifted to such suppliers and subcontractors, the contract instruments should not be construed as intending such assumption." *Schuler-Haas Elec. v. Aetna Cas. & Sur.,* 49 A. D. (2d) 60, 371 N. Y. S. (2d) 207 (1975).

There is nothing in the contract between Town and Drywall indicating the intention that Drywall would assume the risk of the owner's default or delay of payments to Town. We hold, therefore, that the lower court erred in directing a verdict on motion of Town solely on the basis it had not received full payment from the owner and, consequently, was not yet liable on its contract with Drywall. We do not think sub-paragraph (iv) created a condition precedent but rather only postponed payment by Town for a reasonable time so as to afford Town an opportunity to obtain funds from the owner. The evidence created a jury issue as to what constitutes such a reasonable time.

Reversed and Remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.