Robert K. CHRISTOFFERSON and Oleta L. Christofferson, Plaintiffs,

v.

HALLIBURTON COMPANY et al., Defendants-Appellees,

v.

PHILLIPS PETROLEUM COMPANY, Defendant-Appellant.

No. 78–1022.

United States Court of Appeals, Fifth Circuit.

May 19, 1980.

Rehearing Denied July 15, 1980.

---

Scofield, Bergstedt & Gerard, John B. Scofield, Lake Charles, La., for defendant-appellant.

Joseph J. Weigand, Jr., Houma, La., for Diamond M Drilling Co.

Plauche, Smith, Hebert & Nieset, Allen L. Smith, Jr., Lake Charles, La., for Halliburton Co.

Voorhies & Labbe, E. Gregory Voorhies, H. Lee Leonard, Lafayette, La., for Coastal Rubber Co. & Unigard Ins. Co.

Caffery, Duke, Oubre & Gibbens, John Blackwell, New Iberia, La., for Aeroquip Corp. & Travelers Ins. Co.

Seale, Smith & Phelps, John W. Swanner, Baton Rouge, La., for George Meyer Co.

Hammett, Leake, Hammett, Hulse & Nelson, Eldon T. Harvey, III, New Orleans, La., for B. F. Goodrich Co. & American Motorists, Inc. Co.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Robert Christofferson was seriously injured in an accident on the offshore jackup drilling rig where he worked on August 24, 1973. After filing a lawsuit against the many parties involved in the incident, he settled with each of the defendants and withdrew from the litigation. The district court then proceeded to a trial of the case to determine the rights of the defendants to indemnity and contribution *inter se*. Phillips Petroleum Company appeals from a judgment granting indemnity from Phillips to Diamond M Company and denying indemnity to Phillips from other defendants.

Christofferson's injury occurred on Diamond M Company's rig No. 99, which at the time of the accident was situated in the Gulf of Mexico 100 miles off the coast of Louisiana. Phillips Petroleum had contracted with Diamond M for the drilling of a well at that location. The well proved to be dry, and a second contractor, Halliburton Company, was engaged by Phillips for a plug and abandon operation. In a plug and abandon operation, a retainer is inserted into the well and cement is pumped below the retainer, sealing the well opening.

Christofferson was a petroleum engineer employed by Phillips to observe and inspect the operations on rig No. 99, and was Phillips' sole representative on the rig on the day of the accident. The plug and abandon operation was performed jointly by the personnel of Halliburton and Diamond M under the supervision of John Rogers, of Diamond M and Don Terrell, of Halliburton.

The operation required the use of two very durable hoses, one to carry cement from Halliburton's squeeze manifold to the casing and another from the squeeze manifold to the drill pipe. It is standard industry practice to use steel "chicksan" hoses for this purpose. However, an employee of Diamond M suggested the use of steel reinforced flexible hoses that were stored on the rig, and none of the other personnel present dissented.

The plug and abandon exercise was expected to produce a maximum pressure of 2,000 pounds on the hoses. Hence, Rogers and Christofferson agreed to test all lines at 3,000 pounds before commencing the operation. The lines on the standpipe side of the pipehead were tested at 3,000 pounds as ordered, but for some unknown reason, the lines on the casing side were tested at only 1,000 pounds. As fate would have it, the hose on the casing side had become frail with age and overuse. During the "reversing out" stage of the plug and abandon operation, the hose was ruptured by a surge of pressure, causing the manifold to strike Christofferson.

## I. THE PHILLIPS–DIAMOND M INDEMNITY AGREEMENT.

Prior to the trial of the case, the district court granted summary judgment for Diamond M against Phillips for indemnity allegedly owed by Phillips under the terms of an indemnity agreement. The contract between Phillips (Owner) and Diamond M (Contractor) provided as follows:

16.8 *Indemnity by Owner*; Owner agrees to protect, indemnify, and save harmless the Contractor from and against all claims, demands, and causes of action made against Contractor, or in which Contractor may be named party defendant, by Owner's employees, agents, or invitees on account of personal injury or death . . . arising out of work performed by Owner, Owner's employees, agents, or invitees, and contractors or subcontractors (*other than the Contractor under this contract*) or equipment furnished in connection therewith, irrespective of whether such claims are occasioned in whole or in part by the negligence of Contractor, its employees, agents, or invitees, or by the negligence of Contractor's subcontractors or any party for which Contractor is performing services, or the employees, agents, or invitees of such party or subcontractor, or by the unseaworthiness of vessels or craft.

(emphasis added).

Diamond M contends, and the district court agreed, that the above clause clearly establishes Phillips' obligation to reimburse Diamond M for claims made by Christofferson. Phillips counters that the parenthetical "(other than the Contractor under this contract)" limits the coverage of the indemnity agreement to claims for injuries resulting from work performed by persons *other than Diamond M*. In the same breath, Phillips asserts that the work which led to Christofferson's injury "was that of Diamond M (together with Halliburton)."

Phillips' emphasis on Diamond M as a party involved in the work is misplaced. Admittedly, the plug and abandon operation involved the participation of employees

of both Halliburton and Diamond M. It was essential that Diamond M cooperate since Diamond M owned, operated and maintained the rig from which the plug and abandon operation was performed. These facts are not disputed. But Halliburton was under contract with Phillips, and was brought to the rig by Phillips specifically for the plug and abandon operation. Thus, Halliburton was a party whose work was a cause within the coverage of the Phillips-Diamond M indemnity agreement.

■ Phillips interprets the indemnity clause parenthetical "(other than the Contractor under this contract)" as excepting from coverage any claim based on an injury resulting from work involving Diamond M. Under the circumstances of the agreement, such a translation might nullify all indemnification, since the parties must have foreseen that any work on the rig would involve Diamond M. Viewing the clause in its context, we are compelled to affirm the interpretation rendered by the district court, that the parenthetical in question is not an exception to defeat coverage but only a limitation on the types of contractors whose performance may result in an indemnified claim. Thus, Phillips is obligated to indemnify Diamond M for any claims made by Phillips' personnel, provided that the work which caused the injury was done at least in part by any party other than Diamond M. This interpretation is confirmed by the last portion of the indemnity clause, which provides that Phillips shall indemnify Diamond M "irrespective of whether such claims are occasioned in whole or in part by the negligence of Contractor" (Diamond M). Moreover, other relevant clauses of the agreement indicate that the parties intended to make each responsible for the injuries of its own personnel.

The undisputed facts of the case match these terms, and we cannot accept Phillips' proffered interpretation as a reasonable alternative creating a triable issue. Summary judgment on this issue was proper. *Ralli-Coney, Inc. v. Gates*, 528 F.2d 572 (5th Cir. 1976).

■ Phillips' second defense against the indemnity claim is that Phillips was relieved of its duty to indemnify by Diamond M's breach of the contract prior to Christofferson's accident. Phillips cites paragraph 16.6 which provides:

*Inspection of Materials Furnished by Owner*: Contractor agrees to inspect all materials furnished by Owner before using same, and to notify Owner of any apparent defects therein; and Contractor's use of such materials without notifying Owner shall be conclusive evidence that such materials were free from apparent defects. Contractor shall not be liable for any loss or damage resulting from the use of materials furnished Owner containing latent defects.

Phillips asserts that the defect in the hose supplied by Phillips and used in the plug and abandon operation was apparent, that Diamond M's personnel knew or should have known of the defect, and that Diamond M's failure to inspect the hose or notify Phillips of the defect was a breach of contract precluding any indemnity claim on the contract. The district court disposed of this argument by holding that the indemnity clause was clearly independent of the inspection and notice clause.

Notification by Diamond M of any defects in materials supplied by Phillips was undoubtedly intended to be a condition to certain rights of Diamond M. The important question is whether the failure of that condition vitiates all or only a part of the contract. Phillips would have us apply Texas law to resolve this question despite the maritime character of the case, since the contract provides that it shall be governed by Texas law. We look to Texas law not as an answer to the choice of law issue but to give Phillips the benefit of the doubt. Under either federal maritime law or Texas law, we find that Phillips' interpretation of the contract must be rejected.

■ The general policy of the Texas courts in the construction of contracts is to avoid any finding of a condition precedent that would result in forfeiture, if another reasonable interpretation would save the contract. *Schwarz-Jordan, Inc. of Houston v. Delisle Construction Co.*, 569 S.W.2d 878 (Tex.1978). Thus, the effect of a condition

will be confined to those parts of the contract to which the condition specifically relates. *Knight v. Chicago Corp.*, 188 S.W.2d 564, 144 Tex. 98 (1945); *World Broadcasting System v. Eagle Broadcasting Co.*, 162 S.W.2d 463 (Tex.Civ.App.1942).

Paragraph 16.6 deals with the liability of Phillips to Diamond M for Phillips' delivery of defective materials. Its effect is to create an irrebuttable presumption that materials supplied by Phillips were free from apparent defects if Diamond M accepted the materials without inspection and notification of defects. Phillips' liability to Diamond M in this case, however, turns on Diamond M's right to indemnity rather than Diamond M's right to damages for delivery of defective materials. No language in paragraph 16.1 suggests that the indemnity clause is also conditioned on inspection and notification.

Paragraph 16.8, the indemnity clause, provides that Phillips shall indemnify Diamond M against all claims arising out of work "or equipment furnished therewith," and the indemnity is owed "irrespective of whether such claims are . . . caused in whole or in part" by the negligence of Diamond M. Moreover, the position of the indemnity clause in the organization of Section 16 of the contract shows that the indemnity clause was intended to be independent of the inspection and notice provision. Section 16 is divided into ten paragraphs apportioning losses between Phillips and Diamond M for various casualties. Paragraphs 16.1–16.4 deal with allocation of loss due to damage to the property of Phillips and Diamond M. Paragraph 16.5 protects Diamond M against damage to property of third parties. Paragraph 16.6 deals with liability for defects in materials supplied by Phillips to Diamond M. Paragraphs 16.7 and 16.8 contain indemnity agreements whereby each party is responsible for injuries to its own employees regardless of fault. Paragraphs 16.9 and 16.10 deal with liability for pollution, blowouts, and fire.

Each paragraph is for all appearances a separate agreement as to allocation of loss. That the indemnity provisions are independent of the other provisions is further indicated by the statement in paragraph 16.8 that it applies to claims "on account of property damage (other than property damages as in this paragraph 16 provided for)." Had any paragraph other than 16.8 provided for allocation of losses due to personal injury, an identical exception for personal injury cases would be expected.

## II. LIABILITY OF THE HOSE GROUP TO PHILLIPS.

Phillips also seeks indemnity from a number of defendants known collectively as the hose group, who were involved in the manufacturing and distribution of the steel reinforced hose that caused Christofferson's injury. The hose was manufactured by B. F. Goodrich Company, cut into lengths of 30 feet and marketed by Aeroquip, Inc., and purchased by Coastal Rubber Co. for resale to Phillips. An additional defendant, George Myer Co., fitted the hose with couplings, but Phillips has chosen not to pursue its cross-claim against George Myer Co. on appeal. Phillips' indemnity claim against the hose group was tried before the district court sitting without a jury. The court found that the hose was not defective when delivered to Phillips but had been damaged by the extraordinary use to which Phillips had put the hose.

The hose in question was designed by Goodrich as a hydraulic hose. It is constructed of a synthetic rubber inner-liner, a fabric liner, six spiral plies of high steel wire impregnated with synthetic rubber, and a synthetic rubber outer cover. The outer cover protects the steel plies from corrosion. If the protective cover is breached, corrosion caused by seawater may debilitate the pressure holding capability of the hose. When used in hydraulic systems, there is no significant danger of abrasion to the outer cover.

Phillips began to use Aeroquip steel reinforced rubber hoses for pressured cementing work in 1971. Since the industry practice was to employ steel chicksan lines in cementing work, Phillips' use of Aeroquip hoses was unique and innovative. Nevertheless, Phillips' engineers did no research on the suitability of the hoses, consulted no catalogs of hose manufacturers, and did not

discuss their ideas with any hose manufacturer or distributor. The engineers responsible for the decision were aware of the dangers of corrosion in steel reinforced rubber hoses but did not establish any policy or guidelines for storage, handling, inspection or testing of the hoses.

The specific hose involved in this case had been used by Phillips for an undetermined amount of time before its failure on August 24, 1973. It had been used in cement operations, to test and wash casings, and to test blow-out preventers. These uses carried a very high risk of abrasion to the protective cover. In fact, the cover was obviously worn to the point of exposing the steel plies on the day of the accident.

 Phillips contends that the hose group was obligated to issue warnings about the danger. The evidence supports the district court's conclusion, however, that Phillips' use of the hose in plug and abandon procedures was not foreseeable by the hose group. A manufacturer is entitled to assume that its product will not be put to extraordinary uses, and if an accident results from unforeseeable carelessness, the manufacturer is not liable. *Harrison v. Flota Mercante Grancolombiana*, 577 F.2d 968 (5th Cir. 1978). Moreover, the evidence shows that Phillips was fully aware of the danger of abrasion when it began to allow the use of hoses in cementing operations. Phillips is therefore barred from any indemnity against the hose group. *Rideaux v. Lykes Bros. S.S. Co.*, 285 F.Supp. 153 (S.D. Tex.1968).

AFFIRMED.

## ON PETITION FOR REHEARING

PER CURIAM:

On petition for rehearing, Phillips notes that its claim for indemnity against Halliburton was not specifically addressed in the opinion affirming the judgment of the district court. Phillips' indemnity claim rests on the rule that allows a "passive" tort feasor a right to indemnity from an "active" tort feasor. *Tri-State Oil Tool Indus., Inc., v. Delta Marine Drilling Co.*, 410 F.2d 178 (5th Cir. 1969). The rule does not apply in this case since, as the district court found, Phillips' negligent use of the steel reinforced hose contributed to the accident.

The petition for rehearing is DENIED.