FRANK J. VIGILANTE et al., Plaintiffs-Appellants, v. NATIONAL BANK OF AUSTIN, Defendant-Appellee.

First District (4th Division)    No. 81-1827

Opinion filed May 20, 1982.

Jerome Marvin Kaplan and Marc K. Schwartz, both of Chicago, for appellants.

John E. Coffey and Richard A. Kerwin, both of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Frank J. Vigilante and Annette Vigilante, were indebted to the defendant, National Bank of Austin (National), on a note. The dispute between the parties centers around whether the note was

extended by an agreement between the parties. National's position is that there was no extension agreement and on the maturity date of the note exercised its right of set-off and deducted money from the plaintiffs' savings account to pay off the note's principal and interest. The plaintiffs contend that National had no right to do this because the note was not then due and brought this action for actual and punitive damages. On a motion for summary judgment, the trial court found that there had been no extension agreement and entered judgment in favor of National.

The promissory note at issue was dated January 3, 1977. By its terms, it was a six-month note in the amount of $335,000 with a maturity date of July 5, 1977, with interest at the rate of 8 1/4% per annum payable when the note was due. The assignment of the beneficial interest in various trusts was recited on the face of the note as being the collateral for this loan. The note was signed by both Frank and Annette Vigilante. The parties to this action agree that this note consolidated and renewed prior loans made by National to the Vigilantes.

According to the plaintiffs, certain letters which were exchanged between the parties, certain conduct on the part of the Vigilantes and certain statements contained in the minutes of various committees of the Bank are evidence of an agreement between National and the Vigilantes to extend this note.

On March 24, 1977, approximately two months after the note was signed, Robert F. Callery, National's executive vice president, sent a letter to Frank Vigilante. The plaintiffs contend that this letter sets out the terms of the extension agreement. Specifically, the plaintiffs claim that this March 24 letter changes their obligation from a promissory note due at maturity to an installment note due in approximately six years with $5000 plus 8 1/4% interest due each month to be deducted from the Vigilantes' account at the bank. The March 24 letter stated:

> "Mr. Burke has advised me that it has been mutually agreed that *reductions per month* of $5000 plus interest will commence this month. Unless I hear different from you, we are expecting a check from you per this agreement prior to the end of this month."
> (Emphasis added.)

Following this letter, the bank began to make monthly interest deductions from the Vigilantes' bank account.

Over one month later on April 25, 1977, Frank Vigilante responded to the letter. The plaintiffs contend that this response indicates that an extension contract had been agreed to and that the consideration for the extension was monthly deductions of $5000 plus 8 1/4% interest which had not been required under the original note. The April 25 letter from Frank Vigilante to the bank stated:

> "I am sorry that I have not gotten to this sooner but I have been

very busy. Enclosed please find my check in the amount of $15,000 which I am forwarding in order to lower my Note with your bank."

A letter dated May 16, 1977, from Robert Callery to Frank Vigilante is the third and final document which the plaintiffs claim comprise the extension agreement. The letter states:

"This letter is to confirm the conditions and terms as to the continuation of your note with our bank.

We will forbear further action regarding our notice to you of the call of your note in full on the basis that we will continue to receive a regular payment of $5,000 plus interest each month. *We continue to reserve our rights and conditions of the note as to further review of your credit.*" (Emphasis added.)

On June 17, 1977, less than a month before the maturity date on the promissory note at issue, Frank and Annette Vigilante deposited $350,000 in a savings account at National and made one more $5000 payment to National. Then on July 6, 1977, Robert Callery wrote Frank Vigilante a letter informing him that because his note with an unpaid principal balance of $315,000 became due and payable in full on July 5, 1977, National had exercised its right of set-off and charged his savings account for principal in the amount of $315,000 plus interest in the amount of $2,398.23.

In addition to the above facts, the plaintiffs also cite certain language in four separate sets of minutes kept by National to support their position that an extension agreement was in effect. The first set of minutes is from an April meeting of the loan and discount committee which was held approximately three months before the original note was due. The minutes state: "The Committee was informed that the agreed upon *monthly reduction program* has not been adhered to; * * *. It was agreed that the borrower be informed that we expect strict adherence to a reduction program or *legal action will be instituted.*" (Emphasis added.) The second set of minutes is from a May meeting of the confidential loan review committee of the Bank. The minutes state that the Vigilante loan was current on the "agreed upon monthly repayment program," but that the Vigilantes should be notified that "legal action" would be instituted in the event any monthly payment was not received promptly. The third set of minutes is from a meeting of the loan and discount committee held approximately one month before the original note was due. This set of minutes mentions a "monthly repayment program [which had] not been adhered to" along with a recommendation to the Board of Directors that "legal action be instituted immediately to effect collection of the unpaid balance of this loan." The last set of minutes is from a meeting of a special executive committee of the Bank held approximately two weeks before

the note was due. This meeting was convened specially for the purpose of discussing the Vigilante loan. At this meeting, it was decided that the Bank would exercise its right of "set-off" against the $350,000 deposited in the Vigilantes' recently opened savings account if the note was not paid in full on its July 5 maturity date.

■■ We do not believe that the record supports the Vigilantes' claim that there was an extension agreement between the parties. As we construe the letters cited to us by the plaintiffs, we can find no mutual agreement on the part of the parties to extend the initial note. None of the letters cited to us by the plaintiffs employ the word "extension." The March 24 letter sent by the bank to Frank Vigilante, which the plaintiffs claim sets out the terms of the extension agreement, specifically refers to "reductions per month," not an extension. The April 25 letter which Frank Vigilante sent to National specifically states that the enclosed check was "to lower my Note with your bank." There is no mention of a possible extension. Finally, the last relevant letter of May 16 which the bank sent to Frank Vigilante specifically states that National continued "to reserve our rights and conditions of the note as to further review of your credit." There is no indication in this letter that a formal extension agreement was in effect. The law is clear that parties are bound by the language which they use regardless of their intent. (4 Williston, Contracts §606, at 371 (3d ed. 1961); *Traff v. Fabro* (1949), 337 Ill. App. 83, 84 N.E.2d 874.) The language used in these letters is "reduction" and "lower." A court must arrive at meaning from language used in documents. Construction is a pure question of law, and the court must determine this from the documents' clear language. *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 275 N.E.2d 300.

The plaintiffs' conduct, which they claim shows that a formal extension agreement was created, also supports the conclusion that the Vigilantes and National had merely agreed to some kind of a loan reduction program. On April 25, 1977, Frank Vigilante sent a $15,000 payment of principal to National. Then on June 17, 1977, he sent another $5,000 payment to National. These payments reduced the outstanding principal on his loan from $335,000 to $315,000, the latter being the amount of principal set-off by the bank.

The sets of bank minutes cited to us by the plaintiffs are also unconvincing proof of the existence of an extension agreement. These minutes consistently refer to the arrangement between the parties as a "monthly reduction program" and a "monthly repayment program." In all four sets of minutes, National emphasizes its decision to institute legal action if the note is not paid at maturity. Specifically, the minutes refer to the fact that "legal action will be instituted," that the Vigilantes should be notified that "legal action would be instituted" and, as the maturity date

on the note grew closer, that "legal action be instituted immediately" and that a "set-off" should be exercised.

 Subsequent to the signing of the note, the parties entered into some sort of an arrangement to reduce the principal balance of the note and also to make monthly payments of interest. Enforceability of that agreement is not before the court. What is before the court is whether or not these arrangements constituted an extension agreement. For the reasons stated, we believe that they do not and therefore affirm the decision of the trial court.

Affirmed.

JOHNSON, P. J., and LINN, J., concur.