A. A. CONTE, INC., Plaintiff-Appellant, v. CAMPBELL-LOWRIE-LAUTERMILCH CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 83—2765

Opinion filed March 28, 1985.

JIGANTI, P.J., dissenting.

John M. Kaveny, of Chicago, for appellant.

Ruff, Weidenaar & Reidy and Hlustik, Huizenga & Williams, both of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arose from a dispute between A. A. Conte, Inc. (Conte), the plaintiff, and Campbell-Lowrie-Lautermilch Corporation (Campbell-Lowrie), the defendant, wherein Conte sought to recover $83,596 which it claimed was owed by Campbell-Lowrie. The trial court granted Campbell-Lowrie's motion for summary judgment, and Conte brought this appeal.

We are asked to consider whether the trial court erred in granting summary judgment to defendant.

We affirm.

The facts are not in dispute. Campbell-Lowrie was the contractor for a construction project in Northlake. In July 1974, Conte and Campbell-Lowrie entered into a contractual agreement whereby Conte would perform certain work as a subcontractor for Campbell-Lowrie at the construction site. Conte performed excavating work at the construction site between July and December 1974. Campbell-Lowrie had other subcontractors besides Conte, and payments were made to the subcontractors on a monthly basis upon the contractors' submission of bills to Campbell-Lowrie.

The construction project was owned by La Salle National Bank, as trustee, and three individuals who were beneficial interest owners. In November 1974, the owners defaulted on payments and the project was terminated. Campbell-Lowrie informed its subcontractors, including Conte, that the owners had defaulted and advised the subcontractors to cease work immediately. Conte was owed a sum of $83,956 for

work already performed when the project was terminated.

The owners were later determined to be insolvent. Campbell-Lowrie submitted a bill for $149,714.68 to the owners for work done. That bill included the $83,956 owed to Conte. Campbell-Lowrie was not paid by the owners and in turn made no payment to Conte. Subsequently, Conte instituted a claim for a mechanic's lien against the project for the amount due on its contract with Campbell-Lowrie.

Foreclosure proceedings were instituted against the owners of the project, and Conte sought to execute the mechanic's lien in those proceedings. The judge in the foreclosure proceedings found that Conte was owed $83,956 for work performed under its subcontract with Campbell-Lowrie. The judge recognized Conte's mechanic's lien against the project, but found that the lien was inferior and subordinate to the lien for $610,000 held against the project by Associates Capital Company, Inc. The liens held by Conte and other subcontractors for the project could not be satisfied ahead of that held by Associates Capital. The project was foreclosed and sold early in 1979. Conte unsuccessfully attempted to collect the $83,956 directly from Campbell-Lowrie.

In July 1979, Conte filed suit against Campbell-Lowrie in the circuit court of Cook County seeking to recover the amount in question. Campbell-Lowrie denied indebtedness to Conte and raised an affirmative defense to Conte's claim. The gist of Campbell-Lowrie's affirmative defense was that article 18 of its contract with Conte set forth a condition precedent to payment. The condition was that Campbell-Lowrie must first receive payment from the owners of the project under the general contract before it was obligated to pay its subcontractors. The owners had not paid Campbell-Lowrie; therefore, Conte was not entitled to payment from Campbell-Lowrie.

Both parties moved for summary judgment. Conte sought to have the trial court declare that Campbell-Lowrie was obligated to Conte for $83,956. Campbell-Lowrie cited articles 5 and 18 of its contract with Conte, which state:

> "*ARTICLE 5*: Material invoices submitted before the 25th of the current month will be paid by the 28th of the following month, provided the material so delivered is acceptable, *and if payment for invoiced material has been received by Campbell-Lowrie-Lautermilch Corporation under its general contract.* Discountable bills will be paid as stipulated in the order.
>
> * * *
>
> *ARTICLE 18*: \*\*\* [I]f the work has been satisfactorily performed and invoice as rendered is approved *and if payment for*

*such labor and material so invoiced has been received by Campbell-Lowrie-Lautermilch Corporation under its general contract, the subcontractor will be paid 85% of invoice as approved, less any payments previously made on account for previous periods.* No payments made shall be considered as evidence of acceptance of the work either in whole or in part until the work is completed and accepted, whereupon final payment will be made within thirty (30) days of such acceptance upon receipt of all or any bonds, guarantees, etc. required." (Emphasis added.)

Campbell-Lowrie asserted that its payment to Conte was contingent upon its receiving payment from the owners of the project. Based on the contractual language (articles 5 and 18), Campbell-Lowrie had no obligation to pay Conte since it had not been paid by the owners. The parties filed several memoranda of law in support of their respective positions.

On October 17, 1983, the trial court denied Conte's motion for summary judgment and granted that of Campbell-Lowrie.

■■ ■ On appeal, Conte argues that the contractual provisions cited by Campbell-Lowrie in its affirmative defense was a limitation only as to the time of payment. The provisions gave Campbell-Lowrie a reasonable time in which to pay Conte without respect to whether Campbell-Lowrie had been paid by the owners. Conte urges this court to look at other factors outside the contract to determine the understanding and intent of the parties. Conte points out that the trial court's denial of its (Conte's) motion for summary judgment leads to the conclusion that the language of the contract was ambiguous; therefore, interpretation of the contractual provisions was a question of fact to be determined by the trier of fact. Accordingly, Conte concludes that it was error for the trial court to have granted Campbell-Lowrie's motion for summary judgment.

Campbell-Lowrie points out that the plain meaning of the language in articles 5 and 18 of the contract creates a condition precedent to payment and that there is no ambiguity in the language. Campbell-Lowrie correctly states that whether a contract is ambiguous is a question of law and ambiguity can be found only if the language is reasonably or fairly susceptible of more than one construction. Additionally, failure of the parties to agree on proper construction does not render a contract ambiguous.

In determining the meaning of the contract, especially with regard to paragraphs 5 and 18, every effort must be made to effectuate the intentions of the parties. (*National Aircraft Leasing, Ltd. v.*

*American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470, 475.) A court must arrive at meaning from language used in the contract (*Vigilante v. National Bank* (1982), 106 Ill. App. 3d 820, 823, 436 N.E.2d 652, 655), and if the language in the contract is clear and unambiguous then no evidence outside the contract itself may be considered in determining the contract's meaning. *National Aircraft Leasing, Ltd. v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470.

A court may not rewrite a contract to suit one of the parties but must enforce the terms as written. (*Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 1096, 398 N.E.2d 103, 106.) Thus, the rights of the parties are limited by the terms expressed in the contract. (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512, 387 N.E.2d 862, 865.) Since construction of the contractual terms is a pure question of law (*Vigilante v. National Bank* (1982), 106 Ill. App. 3d 820, 823, 436 N.E.2d 652), we have only to look to the principles and to the contract itself in resolving this dispute.

We do not believe that the record supports Conte's claim that its right to payment by Campbell-Lowrie was absolute and not in anyway contingent upon Campbell-Lowrie's receiving payment from the owners under the general contract. Our analysis of paragraphs 5 and 18 of the contract in question convinces us that the language is clear and unambiguous and, thus, there is no need to resort to rules of construction (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 513, 387 N.E.2d 862) nor extrinsic evidence (*National Aircraft Leasing, Ltd. v. American Airlines, Inc.* (1979), 74 Ill. App. 3d 1014, 1020, 394 N.E.2d 470, 476). It is true, as pointed out by Conte, that conditions precedent are not generally favored, and courts will not construe stipulations to be a condition precedent when such a construction would result in forfeiture. It is also true, as acknowledged by Conte, that plain, unambiguous language contained in the contract binds the parties to a condition precedent.

Since we have already determined that the language of the contract is plain and unambiguous, we must also conclude that the parties are bound by it. We note that the contract in question was between two entities engaged in business in the construction industry and presumably often entered into other contractual agreements of a similar nature in the course of their business. While it is clear that with the benefit of hindsight Conte may have chosen to exclude or draft differently the language of paragraphs 5 and 18, which gave rise to this dispute, this court cannot redraft the contract, and we must

enforce the contract as written and agreed upon by the parties.

The record, as well as established principles of contract law, supports the trial court's ruling.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The parties agree that the issue is whether the two provisions of the contract cited in the majority opinion created conditions precedent. The majority concludes that in fact these provisions did create conditions precedent. Case law and the Restatement (Second) of Contracts lead me to a contrary conclusion.

It is a well-documented common law rule that conditions precedent are not favored by the courts and contracts will not be construed as having conditions precedent unless required to do so by plain, unambiguous language. (*Christofferson v. Halliburton Co.* (5th Cir. 1980), 617 F.2d 403; *United States v. Schaeffer* (9th Cir. 1963), 319 F.2d 907, *cert. denied* (1964), 376 U.S. 943, 11 L. Ed. 2d 767, 84 S. Ct. 798; *Shackleton v. Food Machinery & Chemical Corp.* (E.D. Ill. 1958), 166 F. Supp. 636, *aff'd in part, rev'd in part* (7th Cir. 1960), 279 F.2d 919; *Department of Public Works & Buildings v. Porter* (1927), 327 Ill. 28, 158 N.E.2d 366; *McAtee v. Wes-Lee Corp.* (Okla. 1977), 566 P.2d 442; *Cheyenne Dodge, Inc. v. Reynolds & Reynolds Co.* (Wyo. 1980), 613 P.2d 1234; 17A C.J.S. *Contracts* sec. 338 (1963); 12A Ill. L. & Prac. *Contracts* sec. 231 (1983).

The Restatement (Second) of Contracts sec. 227 (1981), "Standards of Preference with Regard to Conditions," states:

"(1) In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, *an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate* that he has assumed the risk." (Emphasis added.) (Restatement (Second) of Contracts sec. 227 (1981).)

The comments to the above section state that the word "forfeiture" is used to refer to the denial of compensation that results in such a case. (Restatement (Second) of Contracts sec. 227, comment b, at 175 (1981).) The very first illustration for this section of the Restatement

is a virtual reiteration of the facts in the instant case. The illustration states the following facts: A general contractor contracted with a subcontractor for work on a construction project. The contract contained the provision that the subcontractor would receive the contract price, "no part of which shall be due until five days after Owner shall have paid Contractor therefor." The illustration further states that after the work was done by the subcontractor the owner became insolvent and failed to pay the general contractor. The Restatement's position is that this is not an example of a condition precedent and that it was therefore the duty of the general contractor to pay the subcontractor after a reasonable time. Restatement (Second) of Contracts sec. 227, comment b, at 176 (1981).

The illustration in the Restatement was taken from the case of *Thos. J. Dyer Co. v. Bishop International Engineering Co.* (6th Cir. 1962), 303 F.2d 655. A number of other States have addressed this issue and have come to the same conclusion as did the court in *Dyer*. (See *Trinity Universal Insurance Co. v. Smithwick* (8th Cir. 1955), 222 F.2d 16, *cert. denied* (1955), 350 U.S. 837, 100 L. Ed. 747, 76 S. Ct. 74; *Moore v. Continental Casualty Co.* (W.D. Okla 1973), 366 F. Supp. 954; *Darrell T. Stuart Contractor v. Bridges* (1965), 2 Ariz. App. 63, 406 P.2d 413; *Peacock Construction Co. v. Modern Air Conditioning, Inc.* (Fla. App. 1976), 339 So. 2d 294, *aff'd* (Fla. 1977), 353 So. 2d 840; *A. J. Wolfe Co. v. Baltimore Contractors, Inc.* (1969), 355 Mass. 361, 244 N.E.2d 717; *Eastern Heavy Constructors, Inc. v. Fox* (1963), 231 Md. 15, 188 A.2d 286; *Howard-Green Electrical Co. v. Chaney & James Construction Co.* (1971), 12 N.C. App. 63, 182 S.E.2d 601; *Sturdy Concrete Corp. v. NAB Construction Corp.* (1978), 65 App. Div. 2d 262, 411 N.Y.S.2d 637, *appeal dismissed* (1979), 46 N.Y.2d 938, 415 N.Y.S.2d 212, 388 N.E.2d 349; *Mignot v. Parkhill* (1964), 237 Ore. 450, 391 P.2d 755; *Elk & Jacobs Drywall v. Town Contractors, Inc.* (1976), 267 S.C. 412, 229 S.E.2d 260.

This series of cases, as well as the Restatement (Second) of Contracts, mandates a finding consistent with their conclusions. The rationale as provided by the above sources highlights the need to critically construe contracts against the finding of conditions precedent. Moreover, the facts in the illustration in the Restatement and those in the above cases closely track the facts in the case at bar and as such provide a convincing basis with which to find that there is no condition precedent in the instant contract. Accordingly, for the foregoing reasons I dissent.