**Cliff BYLER, Appellant,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Appellee.**

**No. 9817.**

United States Court of Appeals
Tenth Circuit.

June 5, 1968.

⊗═66(1)

Edgar Fenton, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for appellant.

Clyde J. Watts, of Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for appellee.

Before PICKETT, LEWIS and SETH, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought by a subcontractor on private construction work in Oklahoma, to recover on a performance and payment bond furnished the owner by the prime contractor. After the surety company's motion to dismiss was denied, the parties agreed to a stipulation of facts and each filed motions for summary judgment. The trial court granted appellee's motion, concluding that the contractor's bond on which appellant Byler sued was not made expressly for his use and benefit; and that under the provisions of the subcontract, Byler had no claim against the prime contractor until the owner had paid the contractor the amount due Byler on the subcontract.

On March 9, 1966 the Paul Skaggs Construction Company entered into a written contract with Aircraft Investment Corporation, described therein as "the Owner", whereby it agreed to build 34 two-story apartment houses in Oklahoma County, Oklahoma. On the same date Skaggs, as required by the contract, obtained a performance and payment bond in which the owner was designated as obligee, and on which the appellee assumed the obligation as surety. Thereafter Byler agreed in two separate instruments to perform designated carpentry and concrete work on the project and to provide certain stated materials in connection with his duties under the subcontracts. It was stipulated that Byler fully performed the work and supplied the materials according to his subcontracts, and that there was an unpaid balance thereon of $14,874.13. In addition, it was stipulated that Skaggs has not been paid by Aircraft.

The principal contract is of the cost-plus variety whereby the contractor agreed "to provide all the labor and materials and to do all things necessary for the proper construction of the work

shown and described in the drawings and specifications.[1]" The owner agreed to reimburse the contractor monthly for all amounts paid out by him during the previous month on account of labor and materials, including subcontracts.[2] For his services, the contractor was to receive $175.00 per week and, in addition, 2% of the total contract costs. Bids submitted by subcontractors were subject to the approval of the owner, but clearly the contract contemplated that all costs of labor and material, including that furnished by subcontractors, were to be paid by the contractor, and failure "to make prompt payment to subcontractors or for labor and material" was sufficient cause to terminate the contractor's employment. Typical of performance and payment obligations, the bond which was furnished provided that if the contractor should faithfully perform the contract and pay all persons having contracts directly with the contractor for labor and materials, the obligation of the surety would be null and void.[3]

■■■ The law is settled in Oklahoma that when a contractor provides a performance bond to an owner, as required by a building contract, the intent of the contracting parties is the controlling factor in determining whether the bond is for the benefit of unnamed third parties furnishing labor and materials under subcontracts, or otherwise. In ascertaining this intention, the terms of the bond shall be construed along with those of the principal contract. Gibbs v. Trinity Universal Ins. Co., Okl., 330 P.2d 1035; Aetna Cas. & Surety Co. v. Tucker, 174 Okl. 343, 50 P.2d 339. The principal contract in the Gibbs case was for a fixed amount, and the owner was the only obligee named in the bond, which did not contain the conventional payment bond features. The contract provisions required the contractors to pay the subcontractors. The court rejected the argument that the performance bond was made solely for the protection of the building owner. In allowing the subcontractor to recover, the court repeatedly approved decisions in other jurisdictions in which the intention of the parties was liberally construed. These decisions, which adhere to the better-reasoned view, have permitted subcontractors to enforce their claims without having filed mechanics' liens where there was revealed an intention in the instrument to benefit them as third-party beneficiaries. Bristol Steel & Iron Works, Inc. v. Plank, 163 Va. 819, 178 S.E. 58, 118 A.L.R. 50; Algonite Stone Mfg. Co. v. Fidelity & Deposit Co., 100 Kan. 28, 163 P. 1076, L.R.A.1917D, 722;

1. The pertinent paragraph of the prime contract contains the following provisions:
   "6. The Owner agrees to reimburse the Contractor in current funds for all costs incurred by the proper execution of the work and paid directly by the Contractor, such costs to include the following items: * * * (a) All labor directly on the Contractor's payroll * * * (c) The amount of all subcontracts."

2. Section 18 of the contract provides:
   "The Contractor shall, between the first and fifth of each month, deliver to the Architect a statement showing in detail and as completely as possible all moneys paid out by him on account of the cost of the work during the previous month for which he is to be reimbursed with original payrolls for labor checked and approved by a person satisfactory to the Architect, and all re-

ceipted bills. The Architect shall check the Contractor's statement of moneys due and shall promptly issue certificates to the Owner for all such as he approves, which certificates shall be payable on issuance."

3. The bond provides in part:
   "NOW, THEREFORE, the condition of this obligation is such that, if the Principal shall faithfully perform the contract on his part, and shall fully indemnify and save harmless the Obligee from all cost and damage which the Obligee may suffer by reason of failure so to do and shall fully reimburse and repay the Obligee all outlay and expense which the Obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor and materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

Anno. 77 A.L.R. 21 and 118 A.L.R. 59; 2 Williston on Contracts, 3d Ed. 1959, § 372. This view prevailed in Gibbs, regardless of Section 4988, C.O.S.1921 (15 O.S. § 29) which provides that a third-party beneficiary may enforce only a contract made expressly for his benefit. The court construed the contract and bond as having been intended for the protection of the subcontractor and directed judgment to be entered for the unpaid balance due on his contract.

The contract here obligated the contractor to provide all labor and material necessary for the completion of the building program for which the owner agreed to pay the costs and a fixed fee for the contractor's services. In the absence of provisions in the contract and bond indicating otherwise, the cost-plus feature of the principal contract would be immaterial as to those who had furnished labor and material under a subcontract for a fixed amount. The contract imposed a duty on the contractor to pay the costs of labor, materials and subcontracts; the owner's agreement to reimburse the contractor for these costs does not lead to the conclusion that the contractor was relieved of the initial liability therefor. The appellee's bond, however, not only provided that the owner would be indemnified for failure of the contractor to perform the contract, but also guaranteed that the contractor would pay all persons having contracts directly with the contractor for labor and material. This latter provision is the essential difference between a performance bond only and a combined performance and labor and materials payment bond. 17 Am.Jur.2d, Contractors' Bonds § 1. Considering the disposition of the Gibbs case by the Supreme Court of Oklahoma, we think the conclusion is unescapable that under Oklahoma law the parties who executed the bond intended that subcontractors on the job should be indemnified for loss resulting from the contractor's default.

The subcontracts which were sued upon in this case were identical except as to the amount to be paid the subcontractor. The provision fixing the method of payment for materials and labor employed by the subcontractor is as follows:

"IN CONSIDERATION WHEREOF, the said Contractor agrees that he will pay to the said Sub-contractor, in monthly payments, the sum of * * for said materials and work, said amount to be paid as follows: * * * per cent. (100%) of all labor and material which has been placed in position and for which payment has been made by said 'Owner' to said Contractor, to be paid on or about the 15th of the following month, except the last payment, which the said Contractor shall pay to said Sub-contractor immediately after said materials and labor installed by said Sub-contractor have been completed, approved by the said Architect, and final payment received by the Contractor and satisfactory evidence furnished to Contractor by Sub-contractor that all labor and material accounts for use on this particular work have been paid in full."

The trial court held that under the foregoing provision the principal contractor was not indebted to the subcontractor until after payment had been received by the principal from the owner. In effect, the trial court interpreted this provision as a condition precedent to the obligation of the principal contractor to the subcontractor. We agree with the appellant that this conclusion is erroneous.

Recognizing that a contract may contain a condition which makes performance dependent upon the happening of a future event, the courts generally have looked with disfavor upon such contract stipulations and will not construe them as conditions precedent unless required to do so by the plain and unambiguous language of the contract. Kasishke v. Baker, 10 Cir., 146 F.2d 113; Southern Surety Co. v. MacMillan Co., 10 Cir., 58 F.2d 541. A contract provision similar to the one in the present case was considered in Thos. J. Dyer Co.

v. Bishop Internat'l Eng. Co., 6 Cir., 303 F.2d 655, where it was held that the provision was designed only to delay payment for a reasonable time, and did not otherwise affect the obligation to pay as provided in the subcontract. The language of the Sixth Circuit, with which we agree, is applicable. The court said:

"Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties. * *

In the case before us we see no reason why the usual credit risk of the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner. North American Graphite Corp. v. Allan, 87 U.S.App.D.C. 154, 184 F.2d 387, 390. Paragraph 3 of the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. Stewart v. Herron, 77 Ohio St. 130, 149, 82 N.E. 956. To construe it as

requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into."

See also, United States for Use of Moseley v. Mann, 10 Cir., 197 F.2d 39; Darrell T. Stuart Contr. of Arizona v. J. A. Bridges & Rust-Proofing, Inc., 2 Ariz. App. 63, 406 P.2d 413; Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755.

The judgment is reversed and the case remanded with instructions to enter judgment in favor of the plaintiff for the unpaid balance of $14,874.43, together with interest at the legal rate from December 6, 1966.