Henry L. MOORE, an Individual, d/b/a
Henry's Electric Company,
Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, a corporation, Defendant,

Marilyn Apartments, Inc.. Defendant-Intervenor.

Civ. No. 71-741.

United States District Court,
W. D. Oklahoma,
Civil Division.

Sept. 10, 1973.

Glenn H. Grubb, John T. Edwards, Oklahoma City, Okl., for plaintiff.

Clyde J. Watts, Oklahoma City, Okl., for defendant as well as for defendant-intervenor.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

The issue between the above parties covered by this Memorandum Opinion has to do with the effect of a portion of Paragraph 15 of the Subcontract Agreement entered into on October 13, 1969 between the Plaintiff as Subcontractor and Defendant-Intervenor Marilyn Apartments, Inc., (Marilyn) as Contractor. The parties have submitted this issue to the Court for decision on Stipulations Of Fact and Briefs, no additional evidence being desired for presentation to the Court by any party.

Plaintiff was the electrical subcontractor under Marilyn for an apartment project in Oklahoma City. Marilyn has not paid Plaintiff all that is due Plaintiff for this electrical work.[1]

Defendant Continental Casualty Company (Continental) is involved herein as the company furnishing the Labor and Material Payment Bond with Marilyn as principal. For the purpose of this controversy the position of Marilyn and Continental appears to be the same.

Paragraph 15 of the Subcontract between Plaintiff and Marilyn provides in part as follows:

"15. Contractor agrees to pay Subcontractor for his performance of this sub-contract as above provided the sum of FIFTY THREE THOU-

---

1. The balance now due Plaintiff by Marilyn is not in controversy as far as this Memorandum Opinion is concerned.

SAND EIGHT HUNDRED FIFTY DOLLARS AND NO CENTS ($53,850.00) in various payments as herein provided, as follows: Reference is hereby made to the general contract between Contractor and Owner and the above sum to be paid Sub-Contractor will be paid in payments as and when Contractor receives payments from the Owner for the work performed and materials furnished hereunder, and where payments are made by the Owner upon estimates or for percentages of work completed, Sub-Contractor shall then receive his proportionate part thereof . . . The retained or remaining percent shall be paid after final estimate is made and after the architect and the Owner has certified their satisfaction as to the completion of this sub-contract, and after the Contractor has been paid by the Owner."

Marilyn and Continental claim that the owner has not paid Marilyn all that Marilyn is entitled to receive as general contractor on the project and for this reason Plaintiff is not now entitled to be paid the balance due him by virtue of the above provision of Paragraph 15. Plaintiff, relying on the case of Byler v. Great American Insurance Company, 395 F.2d 273 (10th Cir. 1968), claims that he is entitled at this time to receive from Marilyn and therefore recover from its payment bond surety (Continental) the balance due him on said Subcontract.

Our Circuit in *Byler, supra,* considered the same type provision[2] as contained in Paragraph 15, *supra,* and its meaning and effect. *Byler* held:

"The trial court held that under the foregoing provision the principal con-

tractor was not indebted to the subcontractor until after payment had been received by the principal from the owner. In effect, the trial court interpreted this provision as a condition precedent to the obligation of the principal contractor to the subcontractor. We agree with the appellant that this conclusion is erroneous.

Recognizing that a contract may contain a condition which makes performance dependent upon the happening of a future event, the courts generally have looked with disfavor upon such contract stipulations and will not construe them as conditions precedent unless required to do so by the plain and unambiguous language of the contract. Kasishke v. Baker, 10 Cir., 146 F.2d 113; Southern Surety Co. v. MacMillan Co., 10 Cir., 58 F.2d 541. A contract provision similar to the one in the present case was considered in Thos. J. Dyer Co. v. Bishop Internat'l Eng. Co., 6 Cir., 303 F.2d 655, where it was held that the provision was designed only to delay payment for a reasonable time, and did not otherwise affect the obligation to pay as provided in the subcontract. The language of the Sixth Circuit, with which we agree, is applicable. The court said:

'Accordingly, in order to transfer this normal credit risk incurred by the general contractor from the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties. * * *

In the case before us we see no reason why the usual credit risk of

2. In *Byler* the subcontract language was: ". . . said Contractor agrees that he will pay to the said Sub-contractor, in monthly payments, the sum of . . . for said materials and work; said amount to be paid as follows: . . . (100%) of all labor and material which has been placed in position and for which payment has been made by said 'Owner' to

said Contractor, . . . except the last payment which the said Contractor shall pay . . . and final payment received by the Contractor . . ." Continental argues that the language is different in *Byler* and the payment bond here involved. I disagree as the language in each case has the same import.

the owner's insolvency assumed by the general contractor should be transferred from the general contractor to the subcontractor. It seems clear to us under the facts of this case that it was the intention of the parties that the subcontractor would be paid by the general contractor for the labor and materials put into the project. We believe that to be the normal construction of the relationship between the parties. If such was not the intention of the parties it could have been so expressed in unequivocal terms dealing with the possible insolvency of the owner. North American Graphite Corp. v. Allan, 87 U.S.App.D.C. 154, 184 F.2d 387, 390. Paragraph 3 of the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion, paragraph 3 of the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the subcontractor. Stewart v. Herron, 77 Ohio St. 130, 149, 82 N.E. 956, [959]. To construe it as requiring the subcontractor to wait to be paid for an indefinite period of time until the general contractor has been paid by the owner, which may never occur, is to give to it an unreasonable construction which the parties did not intend at the time the subcontract was entered into.'

See, also, United States for Use of Moseley v. Mann, 10 Cir., 197 F.2d 39; Darrell T. Stuart Contr. of Arizona v. J. A. Bridges & Rust-Proofing, Inc., 2 Ariz.App. 63, 406 P. 2d 413; Mignot v. Parkhill, 237 Or. 450, 391 P.2d 755."

Thus, the holding of *Byler*, which the Court finds to be applicable here, leads to a determination of whether payment to Plaintiff has been delayed for an unreasonable period of time after Plaintiff's work was completed.

Plaintiff completed his work on said apartment project on or about June 8, 1971. Final payment was due Plaintiff one month after or July 8, 1971. Plaintiff filed this case on November 29, 1971. By way of a cross-petition (cross-claim) in a mortgage foreclosure case in State Court[3] involving the apartment, Marilyn on January 29, 1973 sued the owner for an amount claimed to be due Marilyn on the apartment project. In response the owner has denied it owes Marilyn anything on said apartment project and by cross-petition (cross-claim) filed in the same case against Marilyn on January 29, 1973 the owner claims that Marilyn owes it $376,873.76 for breach of contract regarding said apartment project for which sum the owner seeks judgment against Marilyn.

The Court has waited patiently at the request of counsel for Marilyn and Continental for this State Court litigation to be tried. The case has been set for trial on at least four separate occasions, namely, March 2, 1973, May 22, 1973, August 16, 1973 and August 22, 1973 and has been struck each time and is now set for trial on November 19, 1973.

The Court finds and concludes as a factual matter herein and under *Byler* that a reasonable period of time for payment to Plaintiff has transpired. Plaintiff has waited more than a reasonable period of time after his work was completed for his pay. Defendant Continental should now be required under its payment bond to pay Plaintiff the bal-

3. This case was filed August 4, 1971 and is styled Midwest Mortgage Company v. The Atrium Corporation; Marilyn Apartments, Inc., et al., Case No. CJ–71–2392 in the District Court of Oklahoma County, Oklahoma.

ance due Plaintiff for its electrical work on the apartment project. Over two years have passed since Plaintiff was entitled to be paid. Plaintiff should not be required to wait any longer on the outcome of the State Court case or otherwise to recover judgment herein, as prayed against Continental.

Moreover, the Continental payment bond provides:

"2. The above named Principal, and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant in the name of the Owner, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon, provided, however, that the Owner shall not be liable for the payment of any costs or expenses of any such suit."

Thus, Continental has agreed to be sued on its payment bond within ninety days after the date on which the last work of a claimant was performed with judgment and execution to follow as appropriate.

Accordingly, judgment should be entered herein in favor of Plaintiff and against the Defendant Continental for the balance due Plaintiff by Marilyn for his electrical work on said apartment project. Counsel for Plaintiff will prepare an appropriate judgment based on the foregoing and the Memorandum Opinion of this Court filed herein on January 18, 1973, submit the same to opposing counsel for approval as to form and then to the Court for signature and entry herein.