**R.N. ROBINSON & SON, INC., Plaintiff,**

v.

**GROUND IMPROVEMENT TECH-NIQUES and Fireman's Fund Insurance Co., Defendants.**

**Ground Improvement Techniques, Inc. Plaintiff,**

v.

**Merchants Bonding Company (Mutual), Defendant and Third–Party Plaintiff,**

v.

**R.N. Robinson & Son, Inc., Robert N. Robinson, Jr. and Robert N. Robinson, Sr. Third–Party Defendants.**

Civil Action Nos. 96–K–1622, 97–K–1203.

United States District Court,
D. Colorado.

Dec. 22, 1998.

Jeffrey B. Stalder, Hall & Evans, LLC, Denver, CO, for R.N. Robinson & Son, Inc.

Frederick Huff, Denver, CO, Steven R. Schooley, Holland & Knight, LLP, Orlando, FL, for Ground Imp. Techniques, Inc.

Patrick Q. Hustead, Giovanni M. Ruscitti, The Hustead Law Firm, Denver, CO, for Merchants Bonding Company (Mutual).

## OPINION AND ORDER ON CERTAIN MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

### FACTUAL BACKGROUND

This litigation arose out of a uranium mill tailings remediation project in Slick Rock, Colorado. In April 1983, the United States Department of Energy (DOE) contracted with MK–Ferguson (MK–F) to clean up several uranium mill tailing sites throughout the United States, including Slick Rock (the "Contract"). MK–F subcontracted the Slick Rock work to Ground Improvement Techniques, Inc. (GIT) which, in turn, subcontracted the earthwork to R.N. Robinson & Son, Inc. (Robinson). The contract between GIT and Robinson incorporated the contract between MK–F and GIT so that Robinson agreed to assume all of GIT's obligations thereunder.

Both GIT and Robinson obtained performance and payment bonds to guarantee their

work. On February 16, 1995, GIT as principal, and Fireman's Fund Insurance Company ("Fireman's") as surety, executed and delivered to MK–F and the United States, payment and performance bonds for the protection of GIT and all persons supplying labor and material for prosecution of the work provided under the contract. The bonds, in the amount of $9,294,051.30 each, guaranteed payment to the Department of Energy (DOE) and MK–F should GIT fail to perform, and insured payment to persons or entities providing labor and materials to GIT in the course of its performance. On May 2, 1995, Merchant's Bonding Company ("Merchant's") issued similar performance and payment bonds guaranteeing Robinson's performance and insuring labor and material payments under the subcontract with GIT. The subcontract performance and payment bonds were issued in the amount of $3,035,668.60 each.

Robinson's part of the reclamation project was the earthwork, i.e., the excavation of a disposal cell in which to bury the mill tailings. The contract and subcontract provided for a higher rate of payment for rock excavation than for common excavation because of the extra work, including drilling and blasting, required to remove rock. The contract specifications required Robinson to uncover the rock so MK–F could classify it as such before the higher rate would apply.

On August 1, 1995, amid disputes regarding delays and complaints that MK–F was making unreasonable demands regarding the excavation and GIT was failing to obtain necessary permits or provide adequate water for dust control, Robinson walked off the job. GIT took over Robinson's work but, on September 29, 1995, MK–F terminated GIT's contract and filed suit. MK–F named both GIT and Fireman's as defendants, asserting claims for breach of contract and for payment under the Fireman's performance bond. *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc. et al.*, Civil Action 95–OK–2510–RC (D.Colo.1995)(later 95–WY–2510 the "MK–GIT Action"). GIT and Fireman's denied liability and GIT counterclaimed against MK–F for wrongful termination of the contract. As part of its case on the counterclaim, GIT argued cessation of earthwork at the site was the result of MK–F's breach, not Robinson's, and presented expert testimony to support that argument. In late 1996, a jury returned a verdict in favor of GIT and Fireman's on MK–F's claims, and awarded GIT $5.6 million in damages on the counterclaim. MK–F appealed the award to the Tenth Circuit and the appeal remains pending. MK–F also posted a supersedeas bond, thus neither GIT nor Robinson has received any payment for work done at the Slick Rock site.

In July 1996, while the MK–F/GIT lawsuit was pending, Robinson filed Civil Action No. 96–K–1622 against GIT and Fireman's, asserting claims for breach of contract and for payment under the Fireman's labor and material payment bond (the "Robinson–GIT Action"). GIT filed a third lawsuit one week later, in Florida state court, naming Merchant's as defendant and asserting claims for breach of the subcontract performance and payment bonds. Merchant's moved to dismiss based on forum non-conveniens, agreeing that, in the event of a dismissal, it would be subject to suit in this court and would accept service as of the July 1996 Florida filing date. The Florida court granted Merchant's request, and GIT refiled its action—assigned Civil Action No. 97–K–1203—here on June 9, 1997 (the "GIT–Merchant's Action"). Merchant's accepted service as agreed, immediately filing a counterclaim against GIT and joining Robinson as third-party defendant.[1]

Both 96–K–1622 and 97–K–1203 were transferred to me from the docket of Judge Downes in early 1998. There are numerous motions pending in both cases, including a motion to consolidate the cases, or, in the alternative, to permit Merchant's to intervene in 97–K–1203; and various motions to dismiss and/or for summary judgment. Because granting them would do away with

---

1. Merchant's responded with an offer on August 31, 1997. GIT claims the offer neither provided for completion of the work nor met Merchant's obligations under the bond. GIT asserts it asked Merchant's for additional details about the offer. Merchant's took the position that GIT had rejected the offer and denied any further obligation under the bond.

most, if not all, of the pending claims in both cases, the instant order is limited to the motions of GIT and Fireman's for dismissal or, in the alternative, for summary judgment in 96–K–1622.

## STANDARDS OF REVIEW AND APPLICABLE LAW.

Both 96–K–1622 and 97–K–1203 are diversity actions over which I have jurisdiction under 28 U.S.C. § 1332. As there are no federal causes of action, state law supplies the legal standards to be applied to the parties' substantive legal claims. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Procedural issues, by contrast, are governed by the Federal Rules of Civil Procedure.

A motion to dismiss filed under Fed. R.Civ.P. 12(b)(6) will be granted "only if [the subject] claims are unquestionably insufficient to entitle the plaintiff to relief ...." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, I accept all well-pleaded facts as true and construe them in the light most favorable to the nonmovant. *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir.), *cert denied*, 118 S.Ct. 55 (1997). Should a motion to dismiss invite consideration of matters outside the pleadings, it will be treated as a motion for summary judgment under Fed.R.Civ.P. 56.

The instant motions refer both to the MK–F/GIT and GIT/Robinson subcontracts, as well as the contents of the various surety bonds. Accordingly, I view them as motions for summary judgment and will apply a Rule 56 standard to their consideration. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In applying this standard, I examine the factual record and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996)(quoting *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party. *Id.*

## DISCUSSION.

In its Third Amended Complaint in 96–K–1622, Robinson asserts three claims for relief against GIT and two claims for relief against Fireman's. Robinson's claims arose after first GIT, then Fireman's, refused to pay for the earthwork Robinson completed at the Slick Rock site. Robinson had demanded payment first under the GIT subcontract and then under the payment bond, only to be told it had defaulted on its obligations and was not entitled to payment. Robinson sued, claiming GIT and MK–F made performance impossible by failing to secure the necessary permits to allow it to perform its work in a timely manner, by failing to supply adequate water and other support at the site, and by requiring Robinson to perform its work in an inefficient, impracticable and unreasonable manner beyond the scope of the contracts. After GIT obtained the verdict and judgment against MK–F in 95–OK–2510, Robinson asserts the refusal to pay has become all the more egregious given the position taken by GIT in that case.[2]

For its relief, Robinson seeks (1) damages against GIT for breach of the GIT–Robinson subcontract; (2) over $1.8 million in payment from GIT under implied contract/quantum meruit for equipment, material, labor and services Robinson claims it provided GIT before leaving the job; (3) action on the payment bond for labor and equipment Robinson supplied through August 1, 1995 (asserted against both GIT and Fireman's); and (4) an award of compensatory and exemplary damages against Fireman's for bad faith fail-

---

**2.** Robinson maintains GIT asserted its contract claims as "pass through" claims in 95–OK–2510 and therefore should be judicially estopped from denying liability on those claims here. *See* Robinson's Motion for Partial Summary Judgment or in the Alternative, Motion in Limine (Judicial Estoppel) (filed Dec. 9, 1997). Because I deny the Motions for Summary Judgment, I need not reach this Motion.

ure to pay on the bond. GIT and Fireman's move to dismiss and/or for summary judgment on each of these claims. I address Defendants' arguments together by claim.

A. Breach of Contract and Payment on Bond Claims.

■ Paragraph 8 of the GIT–Robinson Subcontract contains the following provisions regarding payment:

> [Robinson] agrees to submit to [GIT] applications for payment at such reasonable times as to enable [GIT] to apply for and obtain payment from the Owner. Payment to [Robinson] will be made at a reasonable time after receipt of payment from the Owner; approximately 10 working days.

Amended Subcontract Agreement No. 1 (Fireman's Br. in Support of Mot. to Dismiss, Ex. D) at p. 3. GIT and Fireman's characterize this as a "pay when paid" clause and invoke *Orman v. Ryan*, 25 Colo. 383, 55 P. 168 (Colo.1897), to argue such clauses render payment by MK–F to GIT under the primary contract a condition precedent to any obligation on the part of GIT to pay Robinson under the GIT–Robinson Subcontract. Because GIT has not been paid by MK–F, GIT and Fireman's argue the condition precedent to liability under the Subcontract has not been triggered and that Robinson's payment claims are therefore premature and subject to dismissal.

Robinson denies *Orman* bars liability under the Subcontract and maintains Defendants' application of the case here is also contrary to the weight of authority from other jurisdictions and conflicts with more modern principles of contract law adopted by the Colorado courts in the hundred years since its issuance. According to Robinson, form "pay when paid" clauses in subcontracts are simply timing provisions that affect the method of payment under a contract, not a contractor's liability to pay for work that has been performed. Because courts construe them as giving contractors a "reasonable" amount of time to pay subcontractors, Robinson maintains its claims for payment are ripe because more than a "reasonable amount of time" has expired. Moreover, Robinson asserts GIT should be judicially estopped from denying its liability on the Subcontract, having successfully asserted this liability in its action against MK–F.

The proposition for which Defendants invoke *Orman*, namely, that "pay when paid" clauses render the primary contractor's payment by another a condition precedent to liability under a valid subcontract for work performed, was not central to the court's decision. In *Orman*, a railroad company retained Orman to construct a rail line in the Colorado Rockies with the explicit understanding that financing for the construction depended on the company's successful sale of bonds. Orman subcontracted with Ryan for certain grading and masonry work. The subcontract between Orman and Ryan prescribed the method of payment as follows: "During the progress of the work, and until it is completed, there will be a monthly estimate ... of the .... value of the work done during the month, ... eighty-five percent of which value will be paid [Ryan] as soon after the 15th day of the succeeding month as the said Orman & Crook shall have received the money for said work from the [company]." *Orman*, 55 P. at 169.

Ryan completed the work, but no bonds were sold and the company became insolvent. Orman was never paid for its work, and instead filed lien proceedings to recover judgment against the company for payment under the contract. Invoking the payment provision above, Orman denied liability under the subcontract and refused to pay. Ryan sued, claiming that by obtaining a lien to satisfy judgment against the company, Orman had, in fact, "received money" within the meaning of the terms of the subcontract.

The Colorado Supreme Court denied relief. It agreed with Orman that the subcontract's payment language, "read in light of the conditions that existed at the time [it] was made," evinced an intent that Orman would be obligated to pay Ryan only in case Orman was paid by the company. *Orman*, 55 P. at 170. That payment under the contract was contingent on Orman being paid first was not substantially disputed. "The important and controlling question in the case," the court stated, was "[w]hether .... this contingency

has happened." *Id.* The Court focused nearly exclusively on this question, ultimately rejecting Ryan's argument that Orman's pursuit of a lien constituted "payment" under the terms of the subcontract because Orman had yet to realize any money from the company and the pursuit of a lien had been "forced upon [Orman] by the exigencies of the case." *Id.* "[T]o impose upon [Orman] a personal liability, under the circumstances, would," the Court concluded, "be grossly inequitable and unjust." *Id.* at 171.

*Orman* does not compel the conclusion urged by GIT in this case. Not only was the proposition for which the case is cited not central to the Colorado Supreme Court's conclusion, but the case itself is distinguishable in several salient ways. First, the Colorado Supreme Court found significant the fact that Ryan undertook its work "with knowledge ... that the [company] had no property or assets except the projected line of road, and that the only source from which money could be realized for its construction was the sale of the railway company's bonds." 55 P. at 170. The Court in essence deemed the payment provision a "pay *if* paid," rather than a "pay when paid," clause.[3]

Second, with respect to the lien proceedings initiated by Orman, the Court conceded that Orman might have been deemed to have "received money" for purposes of the paid-if-paid provision if it had accepted property or something else of value from the company in lieu of payment. 55 P. at 170. The result, in that case, "would be as contended by [Ryan]; not because they had received money within the meaning of the contract, but because, of their own volition, they elected to accept the property in lieu of money and thereby precluded themselves from demanding or receiving money from the contract company." *Id.* Here GIT pursued a breach of contract action against MK–F and prevailed. Notwithstanding the pendency of MK–F's appeal, GIT holds a valid judgment against MK–F and has precluded itself from demanding or

receiving additional payment under the contract.

■ Based on the foregoing, I find the proposition for which GIT cites *Orman* applies only to contracts containing "paid if paid" clauses where the parties have clearly and unambiguously shifted the burden of forfeiture to the subcontractor. Even if that were not the case, I find the facts before me distinguishable from those necessary to the Court's conclusion in *Orman.* In doing so, I am mindful of the Colorado Court of Appeals decision in *Printz Services Corp. v. Main Elec., Ltd.,* 949 P.2d 77, 81–82 (Colo.App. 1997), *cert. granted* (1998) and find it neither salient nor persuasive.

There are two reasons for reaching this result. First, conditions precedent create a risk of forfeiture, even when the party against whom the condition operates has no control over whether the condition is met. This is one of the reasons that conditions precedent are "generally looked upon with disfavor." *Byler v. Great American Insurance Co.,* 395 F.2d 273, 276 (10th Cir.1968). Thus, "an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he had assumed the risk." Restatement of Contracts (Second) § 227(1) (1981). Colorado has adopted this policy to avoid the "potentially harsh effects of a forfeiture that can result...." *Rohauer v. Little,* 736 P.2d 403, 409 (Colo.1987).

The other reason for construing these provisions as a promise rather than a precondition is a recognition that sub-contractors generally do not intend to take the risk of the owner not paying the general contractor. *Byler v. Great American Insurance Co.,* 395 F.2d 273, 277 (10th Cir.1968). The general contractor is the one who knows the owner, has evaluated his risk and agrees to take that risk. The sub-contractor only intends to take the risk that the general contractor won't pay.

---

**3.** The distinction has gained significance in the modern era where the majority of courts carve out an exception to the general rule regarding pay-when-paid clauses when the parties expressly contemplate shifting the burden of forfeiture

under a subcontract to the subcontractor by promising payment only *if* the primary contractor is paid, not when. *Architectural Systems Inc. v. Gilbane Building Co.,* 760 F.Supp. 79 (D.Md. 1991).

For both these reasons the "overwhelming majority of jurisdictions" do not construe "pay when paid" clauses as conditions precedent to payment. *Koch v. Construction Technology, Inc.*, 924 S.W.2d 68, 71. If the parties intend otherwise, the contract should "contain an express condition clearly showing that to be the intention of the parties." *Id* (quoting *Thos. J. Dyer Co. v. Bishop Intern. Engineering Co.*, 303 F.2d 655, 661 (6th Cir. 1962)).

Since the clause in this contract does not unambiguously reflect an intent to create a precondition to payment, the clause instead simply creates an obligation to pay in a reasonable time. Therefore, summary judgment on this issue is DENIED.

## B. Payment bond issue

Robinson claims it is a third party beneficiary of the payment bond issued by Fireman's for GIT. GIT and Fireman's Fund claim Robinson should be barred from asserting a claim on the payment bond because it is not specifically mentioned as the beneficiary of payment under the contract.

■ GIT and Fireman's Fund state Colorado law requires that both the bond and contract specifically provide for payment of subcontractors before a subcontractor can become a third party beneficiary. They reach that conclusion by relying on *State Board of Agriculture v. Dimick*, 46 Colo. 609, 105 P. 1114 (Colo.1909).[4] Reliance on this case is misplaced. Colorado has changed its law since that time and has adopted the approach taken in Restatement (Second) of Contracts. *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 n. 7 (Colo.1985). Thus, a third party beneficiary (called an intended beneficiary in the Restatement) may have a right to sue on the contract where "(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302 (1981). Under the first category, sometimes called a creditor beneficiary, the right to sue is derivative of the right of the contract promisee. *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301 (Colo.Ct.App.1988).

■ Under the second part, the beneficiary is given the right to sue because there was an intent to benefit that party. That intent, however, does not have to be expressly provided in either the contract or the bond. "A person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract. [cites omitted.] While the intent to benefit the non-party *need not be expressly recited in the contract,* the intent to benefit the non-party must be apparent from the terms of the agreement, the surrounding circumstances, or both." *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo.1985)(emphasis added). Thus, so long as the intent to benefit can be demonstrated by Robinson, it has the right to sue on the bond.

GIT and Fireman's Fund point to section GC–4 of the General Conditions for Subcontracts as indicating no such intent. That provision states "nothing contained in this subcontract shall create any contractual relationship between any lower tier subcontractor and the Contractor." That section, however, doesn't address the intent of GIT and Robinson when contracting for the bond. Instead, it merely says that Robinson is not a party to the contract between MK–F and GIT. This is not contested. In fact, it is precisely because Robinson is not a party to

4. Robinson claims that GIT and Fireman's Fund have misrepresented the law of this case thus warranting sanctions. Robinson asserts this case involved only a performance bond and therefore it has no application to the issue of the payment bond. This assertion is clearly incorrect. While the court in *Dimick* calls it a performance bond, it is more properly characterized as

a combined payment and performance bond. The bond at issue in *Dimick* became null and void if Dimick "shall pay all bills in connection with the erection of said building." Claims of misrepresentation of the law and requests for sanctions without a careful reading of the case or statute at issue have a hollow ring.

that contract that the third party beneficiary doctrine is invoked.

■ The important factor for determining intent to benefit is the intent of the promisee to the contract. Restatement (Second) of Contracts § 302 (1981). With regard to the bond contract, the promisee is GIT. GIT's intent may be shown by the contract between MK–F and GIT. "If the Subcontract exceeds $25,000.00, the subcontractor agrees to furnish a Payment Bond with a good and sufficient surety or sureties acceptable to the Contractor for the *protection of persons furnishing material or labor* in connection with the performance of the work under this agreement." (emphasis added.) Section GC–2 of the General Conditions for Subcontracts. The bond itself states that if GIT "shall promptly make payment to all persons supplying labor and material" the bond will have no effect. Construing the language of the contract and the bond together, in the light most favorable to Robinson, a jury could find there existed an intent to benefit subcontractors and thus entitle Robinson to make a claim on the bond.

Defendant's argument that Robinson is too remote a subcontractor is not persuasive. That Robinson was a second tier subcontractor to MK–F and third tier to DOE, is insignificant. What matters is Robinson's relationship to GIT. Because Robinson was the immediate subcontractor to GIT, assuming there was an intent to benefit subcontractors, Robinson would be among those benefitted.

Therefore, summary judgment on this issue is DENIED.

## C. Quantum meruit claim.

Robinson claims it is entitled to recovery on a theory of quantum meruit. Strictly speaking, quantum merit describes a manner of calculating recovery, not a basis for relief. More properly, Robinson is asserting an implied contract for the claimed extra excavation work that had to be done to identify the

non-rippable rock. (A claim of unjust enrichment doesn't work because the benefit of the actual work done would go to DOE, not GIT.) Both parties agree that Robinson was hired to do excavation work and there was an express contract which governed that agreement. Robinson, however, claims the changes in the manner of the work to be done were outside the contract.

■ Defendants claim Robinson is barred from the implied contract claim because of issue preclusion. Their argument is that this issue was raised as part of the pass through claims in the action between GIT and MK–F. In that case, the district court dismissed the implied contract claim. First, I note that in this circuit the question of whether state or federal law on issue preclusion in subsequent diversity cases applies is not settled. *Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 977 (10th Cir.1995). For the purposes of this case, however, it is not necessary to resolve this issue because the test under Colorado law is the same as under federal law.[5] "Collateral estoppel will bar a claim if four elements are met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Id* at 978.

Defendants face problems with the first and last elements of that test. First, it is not clear from the transcript provided with the brief that the issue was the same as the one presented here. Specifically, the transcript refers generally to quantum meruit claims, but does not state whether they are claims of GIT or Robinson or which specific claims had been made. Unless it can be demonstrated more clearly that the claim in the first action included the extra work claimed in this case,

---

**5.** Colorado law states the test as follows: "Collateral estoppel bars relitigation of an issue if: (1) the issue is identical to that actually and necessarily adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted was a party or in privity with a party in a prior

proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 82 (Colo.1996).

issue preclusion will not bar Robinson's claim.

▮ Second, even if it had been shown that the issues were the same, issue preclusion would still not apply. A party must have had a "full and fair opportunity" to litigate the claim in the previous case for issue preclusion to apply. *Id.* Thus, issue preclusion will not apply if there is a doubt about the quality, extensiveness, or fairness of the procedures used in the previous litigation. In the previous case, the extensiveness of the proceedings is in doubt for two reasons. First, GIT presented Robinson's claims in the first action. Since GIT did not stand to benefit from the pass through claim (that award would go to Robinson) it would not have had the same incentive to present the claim vigorously as would Robinson. Furthermore, because GIT won at trial on its contract claims against MK–F, it had no incentive to appeal the adverse ruling on the implied contract claim. If, as GIT now claims, that judgment did not include Robinson's pass through claims, Robinson may have chosen to appeal the adverse decision on the implied contract claim but could not because it was not a party. Therefore, Robinson was denied a full and fair opportunity to present its claim and would not be barred by collateral estoppel.

▮ Robinson, however, is unable to support an implied contract claim in this case. Colorado law provides that where there is both an express and an implied contract that cover the same subject matter, the provisions of the express contract govern. *Scott Company of California v. MK–Ferguson Co.*, 832 P.2d 1000, 1002 (1991). Clearly there was an express contract between GIT and Robinson. Furthermore, that contract was for the excavation work that Robinson undertook. This is not a case of a separate agreement made for some other work that was not originally contemplated by the parties. Instead, the issue concerns how that excavation work was to be performed. Robinson alleges that the contract did not cover the specifics of how the non-rippable rock was to be identified. The lengthy technical specifications were not provided with the briefs, so for the purpose of this opinion that

will be assumed correct. It is clear, however, that the contract provided for changes to the contract. (See contract clause 9). Robinson concedes that changes to the scope of the work are covered by this clause, but argues that changes in the manner of the work to be done are not. The clause clearly says, however, that MK–F may "alter" the work. Such alteration must relate to the manner of the work to be done because the clause provides that MK–F may add or subtract to the work to be done, which applies to the scope of the work. The word alter would not be needed if only the scope were intended to be covered. In any event, a contract need not specify every detail of how the work will be performed. That may be left to industry custom, or future negotiation of the parties, for example. That doesn't mean that the express contract does not cover it. Here, however, the express contract does provide for such changes and therefore there cannot be an implied contract.

Therefore, summary judgment for defendants on the quantum meruit (implied contract) claim is GRANTED.

D. The bad faith claim issue has already been dismissed upon stipulation of the parties.